## HENRY M. DAY V. SNYDER BROKERAGE & STORAGE COMPANY.

### Decided May 18, 1910.

**1.—Sale—Agency.**

An agent authorized to purchase for his principal only walnuts of the new crop, though empowered to exercise his judgment as to the variety and quality thereof, did not bind the principal by a purchase of nuts of the previous year's crop which were in consequence of age wormy, defective, and unsalable. The seller was bound to know the limitations on the agent's authority.

**2.—Sale—Ratifying and Repudiating.**

A purchaser who had received walnuts bought by his agent authorized

only to purchase those of the new crop, but given discretion as to selection of variety and quality, had *no right to repudiate the sale on discovery that the quality was bad*, the sale being without warranty. But he could repudiate on discovery that they were not of the new crop which he had authorized the agent to purchase; and his repudiation was in due time when made promptly on discovery of that fact, though he learned it only after receiving and beginning the sale of the article to customers, and had previously found the quality to be bad.

Appeal from the County Court of Tom Green County. Tried below before Hon. Milton Mayo.

Day sued the brokerage company. Defendant had judgment and plaintiff appealed.

*I. J. Curtsinger*, for appellant.—The law implies a warranty of quality or fitness of merchandise on the part of the seller *only* when the buyer has no opportunity to inspect the goods before buying. Joy v. Nat'l Exchange Bank of Dallas, 32 Texas Civ. App., 398; Brantly v. Thomas, 22 Texas, 271; Needham v. Dial, 4 Texas Civ. App., 141.

When one dealer sells to another, not for his consumption, but merely as an article of commerce, no implied warranty arises. Needham v. Dial, 4 Texas Civ. App., 141; Houk v. Berg, 105 S. W., 1176; Battaglia v. Thomas, 5 Texas Civ. App., 563.

One who has purchased goods, and afterward with full knowledge of their condition, sets them up for sale, thereby ratifies his purchase and becomes bound thereby for the purchase price. Dill v. Camp, 22 Ala., 249; Mechem on Agency [1889], p. 95, sec. 148, p. 97, sec. 150.

When the buyer has an opportunity to inspect the goods before buying, and there is no fraud on the part of the seller, the law does not imply a warranty of quality or fitness by the seller, and the rule *caveat emptor* applies. Ratcliff v. Baird, 14 Texas, 44; Needham v. Dial, 23 S. W. R. 240, 4 Texas Civ. App., 141; Joy v. Nat'l Exchange Bank of Dallas, 32 Texas Civ. App., 398; Simkins on Contracts and Sales, pp. 380-381; Benjamin on Sales [6th Am. ed.] [1889], 1, 559, sec. 641, 2, 810, sec. 930, 842, secs. 965, 966.

*W. A. Anderson* and *J. P. Dumas*, for appellee.

JENKINS, ASSOCIATE JUSTICE.—Appellant brought suit to recover of appellees the sum of $383.18, with interest thereon, alleged to be due him from the sale of 3,500 pounds of walnuts, sold to appellees through their agent, Ludwig.

Appellees deny the agency of Ludwig to purchase the walnuts for them in this, that they did not authorize said Ludwig to purchase for them any walnuts, except new, soft-shell walnuts, and that the walnuts shipped by appellant and claimed to have been sold to them through said Ludwig, were old walnuts, wormy, and not merchantable, and of no value in the market at San Angelo, Brownwood or Lampasas, where they were received.

The proof shows that the appellees were in the wholesale mercantile business at San Angelo, Brownwood and Lampasas, and that they

ordered through Fred. B. Ludwig, who was a broker in New York, 3500 pounds of walnuts, to be shipped 1000 pounds to Lampasas, 1000 pounds to Brownwood, and 1500 pounds to San Angelo. This amount of walnuts was shipped to appellees, but they were not new walnuts, and were unsalable and had no market value at the places where they were received.

This case rests upon two propositions: First, did the appellees authorize Ludwig to purchase the walnuts which were received by them; second, if not, did they ratify said sale, after the walnuts were received? To show that this is a correct view of the legal propositions involved in the case we here refer to legal propositions made by appellant under his third, fourth, fifth, sixth, seventh, eighth, ninth and tenth assignments of error. Under these assignments the appellant submits, in several forms, in substance this legal proposition: That it is immaterial that the walnuts were wormy and unsalable, for the reason that the undisputed evidence shows that there was no express warranty on the part of the appellant, and that the law does not imply a warranty where goods are sold by one merchant to another, the purchaser having examined the goods before buying, or having an opportunity so to do; and especially is this true where the goods are sold for the purpose of being resold, and not for the purpose of being consumed by the purchaser. We concur in the propositions of law contended for by the appellant in this regard, and think that he is fully sustained therein by the authorities which he cites, to wit: Joy v. Bank, 32 Texas Civ. App., 398, 74 S. W., 325; Needham v. Dial, 4 Texas Civ. App., 141, 21 S. W., 240; Houk v. Berg, 105 S. W., 1176; Battaglia v. Thomas, 5 Texas Civ. App., 563, 23 S. W., 385. But the question still remains, did the appellees purchase these goods at all, with or without inspection, with or without warranty, express or implied? The appellant says that the appellees did purchase the goods with opportunity to inspect the same, because their agent Ludwig did so, and relies upon the maxim *qui facit per alium, facit per se.* But was Ludwig their agent for the purpose of making this purchase? The facts with reference to this are: On September 23, 1907, the appellees wrote Fred B. Ludwig, a broker in New York, to purchase for them certain goods, among others, walnuts. That portion of the letter referring to the walnuts is as follows: "Please buy for us for shipment on earliest date, the following orders: For shipment to San Angelo, Texas, 1500 pounds new soft-shell walnuts; for shipment to Lampasas, Texas, 1000 pounds new soft-shell walnuts; for shipment to Brownwood, Texas, 1000 pounds new soft-shell walnuts. Please use your judgment in getting us good stock and write prices on these orders and oblige. Yours truly, Snyder Brokerage & Storage Company." Ludwig filled the order as to the other goods, but with reference to the walnuts, he replied as follows:

"New York, September 30, 1907.

"Snyder Brokerage & Storage Co.,
      "San Angelo, Texas.
"Gentlemen:
      "We beg to thank you for your order of 23rd, and have bought

for your account as per enclosed. · We did not buy the walnuts as we did not know positively what you wanted. There has been no price made on new Grenobles, which is the highest grade on the market. We would not advise anyone to buy old Grenobles, as they run from 30 to 40 percent bad. We quote you as follows on walnuts:

"Chili, Early Nov. Ship't. 1907.........................12c
"French, 1st Half Nov. Ship't from France, 1907.........10¾c
"Cahors,    "    "    "    "    "    "    "    .........11½c
"Marbots, "·    "    "    "    "    "  .  "    .........13c
"Cornes,   "    "    "    "    "    "    "    .........12¾c

"Kindly let us hear from you as to what to buy. Awaiting your instructions, we remain,                    Very truly yours,
                                        "Fred B. Ludwig Co."


To which appellees replied as follows:

                                    "San Angelo, Texas, Oct. 4, 1907.
"Fred B. Ludwig,
       "162 ·Pearl Street, New York, N. Y.
"Dear Sir:
   "We have your letter Sep. 30 reference to walnuts. and in reply will say that we want a good size soft shell walnut. We are not very well acquainted with the different variety of walnuts by name, and will have to leave it to your judgment to buy us something that is good and that will give satisfaction. We of course want them as cheap as possible, but if the cheaper variety are not good size with soft shell, we of course prefer to pay more for the better grade, so use your judgment in this matter, and we are sure it will be satisfactory.
                              "Yours truly,
                         "Snyder Brokerage & Storage Co.,
                                         "Per A. A. Glover."


   Upon receipt of this order Ludwig purchased from appellant the amount of walnuts mentioned in the original order, which were shipped as directed. The walnuts purchased were not new walnuts, but were old Grenobles, and were wormy, running from 40 to 50 percent bad. The appellees notified appellant that the walnuts were not such as they had ordered and that they refused to take the same, but held them subject to his order.

   There is no issue in this case as to appellees holding out Ludwig as their agent, nor was there any· previous dealing between them by which appellant may have presumed that Ludwig had authority to represent appellees. Appellant was well acquainted with Ludwig and made no inquiry as to his authority in the premises. Whatever authority as agent he had was created by the correspondence heretofore set out. An agent cannot bind his principal further than he is authorized to do by his agency. Appellant insists that there was no limitation upon the authority of Ludwig because of the use of the words, "use your judgment in this matter," but by reference to the correspondence above set out it will be seen that he was positively instructed to purchase only new walnuts. He had furnished appellees a price

list of a number of diff∋rent varieties of walnuts, giving the names thereof. Appellees replied that they were not well acquainted with the different varieties of walnuts by name, and added, "We will have to leave it to your judgment," and concluded by saying, "Use your judgment in the matter." This gave Ludwig discretion as to what variety of walnuts he would buy, provided they were new walnuts, but did not give him authority to buy any walnuts that were not new. While it is true "that if there was no express warranty by the seller and no fraud on his part, the buyer who examines the article himself must abide by all losses arising from latent defects, equally unknown to both parties," it is also true, "the rule does not reasonably apply to those cases where the purchaser has ordered goods of a certain character," and the goods sent are not of the character ordered. Brantley v. Thomas, 22 Texas, 274. Now, if this be true as between the parties to the sale and purchase, it is equally true as to the authority conferred upon an agent. Where the agent is authorized to purchase goods of a certain character, and the goods which he purchases are not of that character, he exceeds his authority, and the principal is not bound thereby. There being no question of estoppel in this case, the appellant was bound at his peril, to know the extent of the authority of Ludwig in making the purchase. We conclude, that Ludwig was not the agent of the appellees to purchase any walnuts except new walnuts, and that he acted without authority in making said purchase; at least, the evidence is sufficient to sustain the finding of the jury to this effect.

As to the question of ratification by appellees, the evidence shows that they discovered as soon as the walnuts were received that they were not of the quality that they desired, but that they did not discover that they were not new walnuts until they had sold some of them to their customers, and their customers had returned the walnuts purchased. The walnuts were shipped on October 9th; the record does not show when they were received; appellees notified appellant that they would not accept the walnuts on October 28th. Appellant contends that the action of appellees in putting the walnuts on the market, and their failure to repudiate the purchase of the walnuts for this length of time, amounted to a ratification. The evidence, as stated, shows that they did not repudiate the contract immediately upon discovery that the walnuts were not of the quality which they desired, but the evidence will support a finding that they did repudiate this contract as soon as they discovered that they were not new walnuts. This issue was submitted in the charge of the court.

Now, taking the law as the appellant contends that it is, and as we hold it to be, that the seller of these walnuts did not guarantee their quality, the appellees having purchased them through their agent, who was authorized to purchase walnuts for them, there being no fraud or misrepresentation on the part of the seller, the agent having had an opportunity to inspect the walnuts before making the purchase, and, in fact, as the evidence shows, had inspected this lot of walnuts a short time before making this purchase, and knew that they were bad, as shown by his letter, from 30 to 40 percent, suppose the appellees had undertaken to repudiate this contract as soon as they

discovered the unmerchantable quality of the walnuts received. The appellant could have replied: "The act of your agent was your act. I dealt with him at arm's length, made no false representations, and you, through your agent, knew, or could have known the quality of the walnuts that you were purchasing, and therefore, you have no right to repudiate this contract, simply because the walnuts are not of as good quality as you desired." Appellees as well as others, are presumed to know the law, and are presumed to know that they had no right to repudiate this contract simply because the walnuts were not of as good quality as they desired. Appellees were not called upon to attempt to repudiate the purchase before they knew, or by the use of ordinary diligence, could have known that they had legal grounds for so doing. But when they discovered that the walnuts were not of the kind which their agent was authorized to purchase; that is to say, when they discovered that they were not *new* walnuts, their agent not being authorized to purchase any other kind, they then had the right to repudiate the contract, and the evidence does not show any delay in repudiating the same after this information came to their knowledge. Upon the question of ratification, the court instructed the jury that, although they might find that Ludwig had no authority to purchase the walnuts in question, or, that in making the purchase he exceeded his authority, still, they would find for appellant if they further found that the appellees, with knowledge of the facts, ratified said contract, and that a sale of said walnuts or any part thereof, after such knowledge on their part, would amount to a ratification. The jury found for the defendant and judgment was entered accordingly.

We hold that no material error was committed in the trial of this case, and the judgment of the court below is affirmed.

*Affirmed.*