J. Bill BECKER and Jim Clark, On Behalf of Themselves and All Others Similarly Situated *v.* W.J. "Bill" McCUEN, Secretary of State, Appellee, and S.T. "Ross" Smith, Jr., Individually and On Behalf of The Committee for Amendment 2, Appellee-Intervenors

90-286                                                      789 S.W.2d 71

Supreme Court of Arkansas
Opinion delivered October 31, 1990

*Youngdahl, Trotter, McGowan & Farris,* by: *Scott C. Trotter,* for appellants.

*Steve Clark,* Att'y Gen., by: *R.B. Friedlander,* Solicitor General, for appellee.

*Friday, Eldredge & Clark,* by: *Paul B. Benham III* and *Robert S. Shafer,* for appellee-intervenors S.T. "Ross" Smith, Jr., Individually and On Behalf of the Committee for Amendment 2.

ROBERT H. DUDLEY, Justice. The appellants, J. Bill Becker and Jim Clark, filed this action in chancery court asking that the proposed "Interest Rate Amendment" be taken off the November 6, 1990 ballot. They argued that the popular name and ballot title were defective and misleading. The Chancellor refused to strike the proposed amendment from the ballot. We affirm that decision.

In Arkansas there are two different ways for a constitu-

tional amendment to be proposed to the public. The two courses employ different procedures and have different legal requirements. *Chaney* v. *Bryant*, 259 Ark. 294, 532 S.W.2d 741 (1976). The first way, which has been available through all five of our constitutions, is through the General Assembly. The requirements of that method are set out in Ark. Const. art. 19, § 22. The second way, adopted in 1920, is through the initiative and referendum power reserved to the people. The requirements of the second way are set out in Amendment 7. The provisions of Amendment 7 do not govern constitutional amendments proposed by the General Assembly. *Berry* v. *Hall*, 232 Ark. 648, 339 S.W.2d 433 (1960). This case involves an amendment proposed by the General Assembly and, accordingly, is governed by Ark. Const. art. 19, § 22. In such cases our jurisdiction is appellate only. *Berry* v. *Hall, supra.*

The factual background leading to this case is not complex. The amendment was proposed in 1989 through a House Joint Resolution. The title of that joint resolution was styled:

PROVIDING FOR A PROPOSED CONSTITUTIONAL AMENDMENT TO ESTABLISH A MAXIMUM LAWFUL RATE OF INTEREST IN THIS STATE

The joint resolution provided that the ballot title would be:

AN AMENDMENT TO SECTION 13 OF ARTICLE XIX OF THE CONSTITUTION OF THE STATE OF ARKANSAS TO CONTROL INTEREST RATES AND SET THE PENALTY FOR VIOLATIONS THEREOF.

It further provided that the popular name would be:

THE 1989 INTEREST RATE CONTROL
AMENDMENT

Ark. Code Ann. § 7-9-113(b)(2) and (c) (1987) require the Secretary of State to publish the proposed amendment, with each legal notice to contain "the popular name, the ballot title" and a text of the amendment. After publication, the Secretary of State is to furnish the election commissioners the popular name and ballot title for the official ballot. Ark. Code Ann. § 7-9-115

(1987). Appellee McCuen, in performing his statutory duties, somehow added the title of the joint resolution to the end of the designated ballot title. The result was that the legal notices were published, and the official ballots are printed as follows:

(POPULAR NAME)
THE 1989 INTEREST RATE CONTROL
AMENDMENT
(BALLOT TITLE)
AN AMENDMENT TO SECTION 13 OF ARTICLE XIX OF THE CONSTITUTION OF THE STATE OF ARKANSAS TO CONTROL INTEREST RATES AND SET THE PENALTY FOR VIOLATIONS THEREOF. PROVIDING FOR A PROPOSED CON-STITUTIONAL AMENDMENT TO ESTABLISH A MAXIMUM LAWFUL RATE OF INTEREST IN THIS STATE.

Appellants advance six arguments for reversal of the trial court. Their first is that the trial court should be reversed because its written opinion did not address each of their contentions. We need not dwell on the argument. An appeal in a chancery case opens the whole case for review as if no decision had been made in the chancery court. *Ferguson* v. *Green*, 266 Ark. 556, 587 S.W.2d 18 (1979).

> It has been the invariable practice of this court not to remand a case to a chancery court for further proceedings and proof where we can plainly see what the equities of the parties are, but rather to render such decree here as should have been rendered below.

Accordingly, we now address each of appellants' remaining arguments.

Their primary argument is that the ballot title as published and certified by the Secretary of State is misleading and deceptive. Neither art. 19, § 22, nor any statute, requires that a ballot title be placed on amendments which are proposed by the General Assembly. *Becker* v. *Riviere*, 277 Ark. 252, 641 S.W.2d 2 (1982). Article 19, § 22 only requires that amendments referred to the people by the legislature "shall be so submitted as to enable the electors to vote on each amendment separately." As a direct

result of that language we only look to see: (1) whether the ballot title is sufficient to "distinguish and identify" the proposal, and (2) whether the ballot title is a "manifest fraud upon the public." *Becker* v. *Riviere, supra*. This is a different, and less demanding, standard than is employed for Amendment 7 initiatives. See *Arkansas Women's Political Caucus* v. *Riviere*, 283 Ark. 463, 677 S.W.2d 846 (1984).

■ When the General Assembly submits a ballot title with a proposed amendment it must be sufficient for a voter to distinguish it from the other proposals on the same ballot. This ballot title, even as mistakenly altered by the Secretary of State, distinctly separates and identifies this proposed amendment from the others.

■ In addition, a ballot title must not constitute a manifest fraud upon the public. The mistakenly altered title meets this test. The first sentence was approved word for word in 1982 in *Becker* v. *Riviere, supra*. The General Assembly obviously relied on that approval and repeated it for this proposed amendment. The second sentence, the one mistakenly added, was copied from the title of the joint resolution. That sentence, "Providing For A Proposed Constitutional Amendment To Establish A Maximum Lawful Rate Of Interest In This State," adds information to the title. The additional sentence does not render the title a manifest fraud upon the public.

Appellants further argue that the ballot title is manifestly fraudulent because it fails to disclose that the proposed amendment has no maximum rate of interest for credit contracts which are equal to or exceed $250,000.00. It is not required that the ballot title contain a synopsis of the proposed amendment and cover every detail of it. *Sturdy* v. *Hall*, 204 Ark. 785, 164 S.W.2d 884 (1942). It is sufficient if the title is complete enough to convey an intelligible idea of the scope and import of the proposed amendment. *Westbrook* v. *McDonald*, 184 Ark. 740, 43 S.W.2d 356 (1931). We have recognized the impossibility of preparing a ballot title which would suit everyone. *Hogan* v. *Hull*, 198 Ark. 681, 130 S.W. 716 (1939).

■ The ballot title of this proposed amendment conveys the idea that it amends the present constitution, and that it controls interest rates. The provision relating to credit contracts which

equal or exceed $250,000.00 is a minor exception which will apply only to a few members of the general public. The provisions generally applying to the public do, in fact, control maximum rates. The failure to mention the exception does not constitute a manifest fraud.

Appellants additionally argue that the ballot title constitutes a manifest fraud on the public because the title written by the legislature for the proposed amendment is the same title used for a 1982 interest rate amendment. *See Becker* v. *Riviere, supra*. The argument is without merit because: (1) it is doubtful if any member of the public remembers the ballot title from eight years ago, and (2) even if someone should remember it, there is no deceit in using the same title on two proposed amendments separated by eight years when both deal with the same subject matter.

Appellants next argue that the popular name "The 1989 Interest Rate Control Amendment" is misleading in that it is being voted on in 1990, not 1989. The popular name is a device used to identify the proposal and to facilitate voter discussion before the election. It need not contain the detailed information of a ballot title. *Pafford* v. *Hall*, 217 Ark. 734, 233 S.W.2d 72 (1950). However, it cannot contain catch phrases or slogans which tend to mislead or give partisan coloring to a proposal. *Arkansas Women's Political Caucus* v. *Riviere*, 283 Ark. 463, 677 S.W.2d 846 (1984). The legislature proposed the amendment in 1989 and, accordingly, named it "The 1989 Interest Rate Control Amendment." The use of the 1989 date does not mislead or give partisan coloring to the proposal.

Ark. Code Ann. § 7-9-113(b)(2) and (c) (1987) requires the Secretary of State to publish the popular name and ballot title as written by the General Assembly, and Ark. Code Ann. § 7-9-115(a) requires him to certify the same to the election commissioners. The appellee Secretary of State failed to publish or certify the ballot title as written by the Legislature. Because of this mistake, appellants ask us to strike the proposal from the ballot. We decline to do so.

The Secretary of State's duties were mandatory. The appellants could have applied for a writ of mandamus months ago when the mistaken publication was made. The Secretary would

have been ordered to correct his error. Appellants passed that opportunity and waited instead until the eleventh hour and asked the trial court to strike the matter from the ballot. Striking the proposal from the ballot is not the proper remedy under these facts. Although the appellee made a mistake in the publication and certification, he still substantially complied with the applicable statutes. There is no hint that his mistake has caused any real prejudice to either side of this issue. Accordingly, we decline to strike the proposal from the ballot.

We do not intend for this holding to be construed as authorizing the Secretary of State to rewrite a legislatively proposed ballot title. If, by mistake or otherwise, the Secretary of State's action causes prejudice to either side of an issue, it would be proper for a court to strike the matter from the ballot. Having addressed each of appellants' arguments, and finding no merit in any of them, we affirm.

As previously set out, we have imposed two different standards of review for ballot title cases. When an initiated proposal is submitted under Amendment 7 we require the title to be: (1) intelligible, (2) honest, and (3) impartial. *Leigh* v. *Hall*, 232 Ark. 558, 339 S.W.2d 104 (1960). However, when the Legislature submits a proposal pursuant to art. 19, § 22, we only require that it not be a "manifest fraud upon the public." *Becker* v. *Riviere*, 277 Ark. 252, 641 S.W.2d 2 (1982). A title might well pass one test but not the other. We question the propriety of such a double standard. However, since the General Assembly has relied on our past decision, a change should not be made retroactively. See *Purvis* v. *Hubbell*, 273 Ark. 330, 620 S.W.2d 282 (1981). Accordingly, we give notice of our intention to prospectively reconsider our cases at the next opportunity.

The mandate in this case is effective immediately.

HAYS and GLAZE, JJ., concur.

TOM GLAZE, Justice, concurring; If nothing else is gained from the lottery and interest rate amendment challenges, surely it has become obvious that constitutional reform is necessary in this state's procedures that provide methods to initiate, refer and propose constitutional amendments. Allegations of mistake and fraud attend the ballot title challenges of both amendments.

In trying to sort through and to resolve such disputes, this court, in the majority opinion, points out that, in accordance with prior case law, it must decide the validity of the two ballot titles by using different legal standards or measures to determine if an amendment should be placed on the 1990 General Election ballot. Accordingly, the court applied a strict measure when reviewing the ballot title to the lottery amendment because it was an amendment 7 initiative proposal by the people. However, in this case involving the interest rate amendment ballot title, the court is legally required to apply a more lenient measure merely because the proposal is made by the General Assembly under Ark. Const. art. 19, § 22.

Of course, the source of power (the people or the General Assembly) from which a proposed constitutional amendment comes has no relationship to or bearing on whether a ballot title on a voting machine or paper ballot can be read and understood by the voters. Certainly, no one would seriously argue that public officials should have greater discretion or latitude to mislead voters when wording ballot titles than do citizens who initiate constitutional proposals.

In light of the last-minute circumstances by which these proposed measures come to this court for review, I have expressed my opinion that both proposed amendments should be placed on the ballot. *See Finn v. McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990) (Glaze, J., dissenting). In each case, a full text of the amendment had been published and the proponents and opponents of each amendment have dutifully sounded and revealed the good and bad points of these measures. As I said in my dissent in this court's lottery decision, I have confidence that the voters will use their knowledge and common sense when casting their ballot on these important issues.

But, aside from what might be the results of election year 1990 concerning these amendments, I am hopeful constitutional reform will result from these two ballot title challenges, so the people, by their own initiative or through their representatives, will rid us of similar disputes and controversies in the future.

HAYS, J., joins this concurrence.