The Honorable W.J. "Bill" McCuen Secretary of State State Capitol Little Rock, Arkansas 72201-1094
Dear Mr. McCuen:
This is in response to your request for an opinion on three questions relating to the publication of statewide initiatives and referendums. Specifically, you indicate that A.C.A. § 7-9-113
provides, with respect to such measures, that "[b]efore the election . . . notice shall be published in four (4) weekly issues of some newspaper in each county as is provided by law." This year, you indicate that the Secretary of State intends to publish the proposed ballot issues in an "insert" or "supplement" to be inserted in the appropriate issue of the newspaper. In at least one instance a newspaper, the only one in a particular county, has refused to accept the issues in "insert" form, even though, you note, this office has previously opined that such publication would comply with law. See Op. Att'y Gen. 94-272. Your first question, relating to these facts is as follows:
 1. Is there an alternative publication procedure that would comply with the legal requirements under the above circumstances?
I assume that your question inquires as to whether there is any legal alternative publication procedure which would still allow the Secretary of State to publish the measures, in regard to this county, in "insert" form. That is, I assume that you do not wish to yield to the newspaper's requirement that the ballot issues be published in non-insert form — e.g., in some other type of legal classified advertising format.
I must note that there is no relevant Arkansas statutory law which precisely addresses this question. Only a court, therefore, presented with the exact question, and all the relevant facts, can definitively resolve the issue. The statute you have referenced, A.C.A. § 7-9-113, appears to require publication in a newspaper in each county. See generally, Op. Att'y Gen.94-272. Article 19, § 22 of the Arkansas Constitution, governing amendments referred by the General Assembly, also requires publication in at least one newspaper in each county "where a newspaper is published." Although there is some authority for publication in an adjoining county where there actually is no newspaper published in a county (Cf. generally, Lewis v.Tate, Mayor, 210 Ark. 594, 197 S.W.2d 23(1946)), there are no relevant Arkansas cases on alternative publication measures where there is a newspaper published in the county, but it refuses to publish the notice, either entirely, or in a particular prescribed format.[1] In my opinion, however, a court would be reluctant to strike down a ballot initiative for failure of publication, where the sole newspaper in a county, a private entity, refuses to publish the notice or places unacceptable conditions on the publication. To conclude otherwise would allow this one private entity the power to thwart the people's initiative.
This conclusion assumes, however, that the Secretary of State takes alternative measures which will assure that the ballot issues will become a "public matter" or known to the people of the county affected. See Lewis, supra, at 598, 599. The court in Lewis, which was concerned with the publication of a municipal bond measure in a city where no newspaper was published, found publication in a newspaper in an adjoining city in the same county, which newspaper included a section covering news of the issuing municipality, sufficient. The defendants inLewis had also posted the notice in ten or more of the most public places in the city, more than thirty days before the date set for the election. In addition, the Arkansas Supreme Court in a recent case involving publication of ballot issues, appears to take the position that "substantial compliance" with the statutory publication requirements (including A.C.A. § 7-9-113) will suffice, and that absent a showing of "prejudice," the measure will not be stricken from the ballot. Becker v. McCuen,303 Ark. 482, 798 S.W.2d 71 (1990).
It is therefore my opinion that a court would in all likelihood uphold publication in a suitable alternate newspaper, assuming that the coverage of local events and area of circulation was adequate in the relevant county and all the facts indicate that the people of the county received adequate notice of the measures. This will be a fact question, however, which this office cannot resolve or predict in an official legal opinion. As stated previously, only a court faced with all the facts and circumstances could definitively resolve the issue.
In phrasing your second and third questions, you have cited A.C.A. § 16-3-103, which provides in pertinent part that:
 (c) When a publication of a legal notice of any kind is allowed or required by law . . . a newspaper publishing the notice shall charge and receive not more than its regular classified advertising rate for publication.
You note that the "insert" containing the ballot issues will be prepared and paid for by the Secretary of State and the newspaper will be paid an "insert fee" for including the "insert" in an edition of the newspaper. In one county, you note, a newspaper has agreed to publish the "insert," but only if the Secretary of State contracts to pay a "per word" fee in excess of the regular classified advertising rate. You have therefore posed the following two questions in this regard:
 2. Is it lawful for a newspaper to charge a per word fee to" insert" a supplement which has already been paid for by the Secretary of State?
 3. What is the appropriate course of action for the Secretary of State under these circumstances?
The answer to your second question is "no," if, as you indicate, the rate charged would be in excess of the regular classified advertising rate. See A.C.A. § 16-3-103(c) (Repl. 1994). While ordinarily such matters would be purely matters of contractual law, there is, as you have noted, an Arkansas statute governing the applicable rate. The statute does not address the distinctions between "insert fees" and regular publication rates. A question of fact may therefore arise as to whether a particular charge is violative of the statute. Your question appears to posit, however, that the newspaper will charge a "per word" fee "in excess of its regular classified advertising rate." If this is the case, such a charge would violate A.C.A. § 16-3-103(c).
In response to your third question, this is an issue to be resolved by the Secretary of State, with the advice of his appointed legal counsel. It is not the type of issue which may be resolved in an official legal opinion. Whether the Secretary of State wishes to pursue some type of legal action to ensure this particular newspaper's compliance with the statute, or to simply pursue alternate measures of publication, is a decision to be made by your office, with the advice of counsel.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] It should be noted that the newspaper in this instance is not refusing entirely to publish the notice, it just refuses to publish the notice in an "insert" format. A question thus arises as to whether the Secretary of State must, to insure compliance with law, accede to the newspaper's wishes and publish the notice in a form acceptable to the newspaper, as it is the only one in the county. It is my opinion, however, that this circumstance is different from the newspaper's total refusal to publish the notice only in a matter of degree. Either scenario would allow the newspaper to hold the state, the sponsors of the initiative, and the people at its will.