Mr. Barry Emigh 1104 Seventh Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution, as follows:
 Popular Name OPERATION OF BINGO AND RAFFLES BY NON-PROFIT ORGANIZATIONS, OPERATION OF FOR PROFIT GAMBLING ON WATER VESSELES [VESSELS] AND EXEMPTING FOOD ITEMS FROM NEW AND EXISTING GROSS RECEIPT SALES TAXES OF WHICH LOSS OF TAX REVENUE SHALL NOT BE REPLACED
 Ballot Title AN AMENDMENT PERMITTING THE IMMEDIATE LEGAL OPERATION OF BINGO AS THE RISKING OF MONEY ON A GAME PLAYED WITH CARDS HAVING NUMBERED SQUARES CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY BY COVERING THE NUMBERS ON THE CARDS IN ANY SUCH MANNER AS SHALL BE REQUESTED BY THE OPERATOR OF THE GAME AS A VOLUNTARY OPTION OF OPERATION BY ANY NON-PROFIT ORGANIZATIONS INCORPORATED IN THE STATE OR REGISTERED TO DO BUSINESS IN THE STATE; PERMITTING THE IMMEDIATE LEGAL OPERATION OF RAFFLES AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE OR PRIZES AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE AS A VOLUNTARY OPTION OF OPERATION BY ANY NON-PROFIT ORGANIZATION INCORPORATED IN THE STATE OR REGISTERED TO DO BUSINESS IN THE STATE; EMPOWERING THE LEGAL VOTERS OF ANY COUNTY WITH THE LOCAL BALLOT OPTION UNDER THE PROVISIONS OF AMENDMENT 7 OF THE ARKANSAS CONSTITUTION TO ACCEPT OR REJECT BY THE LEGAL VOTERS OF THAT COUNTY THE OPERATION OF BINGO AND RAFFLES OPERATED BY ALL NON-PROFIT ORGANIZATIONS INCORPORATED IN THE STATE OR REGISTERED TO DO BUSINESS IN THE STATE WITHIN THAT COUNTY; PERMITTING THE IMMEDIATE LEGAL OPERATION OF GAMBLING WITHOUT LICENSE OR FEE BY THE STATE, OR ANY SUBDIVISION OR AGENCY OF THE STATE THEREOF, BY BARRY LEE EMIGH ONLY ON WATER VESSELS ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN ANY COUNTY OF THE STATE ON ANY DAY FOR THE WHOLE OF A 24 HOUR DAY, AND FOR BARRY LEE EMIGH TO HIRE PERSONS TO OPERATE GAMBLING, AND TO SUBCONTRACT THE GAMBLING OPERATION TO ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING TO BE EXTENDED WITHOUT LICENSE OR FEE BY THE STATE, OR ANY SUBDIVISION OR AGENCY OF THE STATE THEREOF, TO THOSE PERSONS HIRED, AND SUBCONTRACTED TO OPERATE GAMBLING WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES WITHOUT LICENSE OR FEE BY THE STATE, OR ANY SUBDIVISION OR AGENCY OF THE STATE THEREOF, BY BARRY LEE EMIGH ONLY ON THOSE WATER VESSELS OPERATING GAMBLING ONLY DURING THE OPERATION OF GAMBLING WITHIN ANY COUNTY OF THE STATE TO BE EXTENDED WITHOUT LICENSE OR FEE BY THE STATE, OR ANY SUBDIVISION OR AGENCY OF THE STATE THEREOF, TO THOSE PERSONS HIRED TO OPERATE GAMBLING, AND SUBCONTRACTED TO OPERATE GAMBLING; DEFINING GAMBLING AS THE RISKING OF MONEY BETWEEN TWO OR MORE PERSONS ON A CHANCE WHERE ONE MUST BE LOSER AND THE OTHER GAINER WITH THE USE OF COMMONLY CALLED GAMBLING AND GAMING DEVICES TO INCLUDE ANY KIND OF ROULETTE WHEEL, SLOT MACHINES OF ANY KIND, GAMING TABLES OF ANY KIND FOR THE USE OF CARDS USED IN ANY MANNER AND GAMING TABLES OF ANY KIND FOR THE USE OF DICE USED IN ANY MANNNER [MANNER] AS A VOLUNTARY OPTION OF OPERATION OF ANY ONE, OR MORE, OR ALL OF THE AFOREMENTIONED GAMBLING AND GAMING DEVICES BY THE GAMBLING OPERATOR; PROVIDING THE OPERATION OF GAMBLING ON ANY WATER VESSEL ON ANY NAVIGABLE WATER WAYS OR PUBLIC LAKES WITHIN ANY COUNTY OF THE STATE SHALL BE TRANSFERABLE AS AN INHERITANCE FROM BARRY LEE EMIGH TO HIS HEIRS, THEIR HEIRS AND SO ON SHALL NOT REQUIRE THE APPROVAL OF THE GENERAL ASSEMBLY WITH SUCH TRANSFER OF AN INHERITANCE TO BE WITHOUT TAXATION OR FEE BY THE STATE ON THE PROPERTY USED FOR THE PURPOSE OF GAMBLING; PROVIDING FOR THE TRANSFER OF THE GAMBLING OPERATION IN PART, OR AS A WHOLE, BY BARRY LEE EMIGH, OR BY HIS HEIRS, THEIR HEIRS AND SO ON TO ANY OTHER PERSON, COMPANY OR CORPORATION TO BE APPROVED BY A MAJORITY VOTE OF APPROVAL OF BOTH HOUSES OF THE GENERAL ASSEMBLY; NO GAMBLING SHALL BE OPERATED BY BARRY LEE EMIGH, OR BY HIS HEIRS, THEIR HEIRS AND SO ON, OR BY ANY OTHER PERSON, COMPANY OR CORPORATION ON ANY WATER VESSEL NOT ANCHORED ON A NAVIGABLE WATER WAY OR PUBLIC LAKE; EMPOWERING THE LEGAL VOTERS OF ANY COUNTY WITH THE LOCAL BALLOT OPTION UNDER THE PROVISIONS OF AMENDMENT 7 OF THE ARKANSAS CONSTITUTION TO ACCEPT OR REJECT BY THE LEGAL VOTERS OF THAT COUNTY THE WHOLE OPERATION OF GAMBLING ON ALL WATER VESSELS ON ANY NAVIGABLE WATER WAYS OR PUBLIC LAKES WITHIN THAT COUNTY; PROVIDING ANY CONTRACTS FOR WORK, CONTRACTS FOR SERVICES, SUBCONTRACTING OF THE GAMBLING OPERATION TO ANY INDEPENDENT CONTRACTOR(S), LEASE OF PROPERTY, PURCHASE OF PROPERTY FOR THE USE OF GAMBLING, BANK LOANS AND LIENS ON PROPERTIES USED FOR THE GAMBLING OPERATION OPERATED BY BARRY LEE EMIGH, OR BY HIS HEIRS, THEIR HEIRS AND SO ON, OR BY ANY OTHER PERSON, COMPANY OR CORPORATION SHALL NOT REQUIRE THE APPROVAL OF THE GENERAL ASSEMBLY; PROVIDING THE LEGAL SHIPMENT OF GAMBLING DEVICES ONTO ANY WATER VESSEL ON A NAVIGABLE WATER WAY OR PUBLIC LAKE WITHIN ANY COUNTY OF THE STATE OPERATED BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR OPERATED BY ANY OTHER PERSON, COMPANY OR CORPORATION; PROHIBITING ANY PERSON UNDER THE AGE OF 21 TO PARTICIPATE IN GAMBLING ON ANY WATER VESSEL ON A NAVIGABLE WATER WAY OR PUBLIC LAKE WITHIN ANY COUNTY OF THE STATE OPERATED BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR OPERATED BY ANY OTHER PERSON, COMPANY OR CORPORATION; PROHIBITING ANY PERSON UNDER THE AGE OF 18 TO PARTICIPATE IN BINGO AND RAFFLES OPERATED BY ANY NON-PROFIT ORGANIZATION INCORPORATED IN THE STATE OR REGISTERED TO DO BUSINESS IN THE STATE; PROVIDING THE GAMBLING OPERATOR BEING BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY PERSON, COMPANY OR CORPORATION TO DEDUCT THE OPERATIONAL COSTS TO OPERATE GAMBLING TO INCLUDE THE COST OF ANY CONTRACTS FOR WORK, CONTRACTS FOR SERVICES, SUBCONTRACTING OF THE GAMBLING OPERATION TO ANY INDEPENDENT CONTRACTOR(S), INSURANCE, EMPLOYEE PAYROLL AND BENEFITS, LEASE OF PROPERTY, INTEREST ON LOANS, ADVERTISING AND PROMOTION, COMPLIMENTARY ALCOHOLIC BEVERAGES AND ALL FEDERAL TAXES WITH ALLOWANCES FOR CHARITABLE DEDUCTIONS FROM THE GROSS GAMING REVENUE PROFIT BEING THE AMOUNT OF MONEY EARNED OVER THE AMOUNT OF MONEY PAID AS GAMING LOSSES BEFORE ANY PAYMENTS ARE PAID TO THE STATE, COUNTY, CITY IF APPLICABLE, DEPARTMENT OF EDUCATION AND DEPARTMENT OF FINANCE AND ADMINISTRATION AS THE NET GAMING REVENUE PROFIT; REQUIRING BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY PERSON, COMPANY OR CORPORATION OPERATING GAMBLING WITHIN 5 WORKING DAYS AFTER THE FIRST TUESDAY OF DECEMBER OF EACH YEAR TO PAY A 4% TAX ON THE NET GAMING REVENUE PROFIT EARNED PREVIOUS TO THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR FROM GAMBLING OPERATED ON ALL WATER VESSELS ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN THE STATE TO BE PAID TO THE STATE AUDITOR AND IMMEDIATELY DEPOSITED INTO THE STATE'S GENERAL FUND; REQUIRING BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY PERSON, COMPANY OR CORPORATION OPERATING GAMBLING WITHIN 5 WORKING DAYS AFTER THE FIRST TUESDAY OF DECEMBER OF EACH YEAR TO PAY A 2% TAX ON THE NET GAMING REVENUE PROFIT EARNED PREVIOUS TO THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR FROM GAMBLING OPERATED ON EACH WATER VESSEL ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN A COUNTY TO BE PAID TO THAT COUNTY'S CLERK AND IMMEDIATELY DEPOSITED INTO THAT COUNTY'S GENERAL FUND; REQUIRING BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY PERSON, COMPANY OR CORPORATION OPERATING GAMBLING WITHIN 5 WORKING DAYS AFTER THE FIRST TUESDAY OF DECEMBER OF EACH YEAR TO PAY A 2% TAX ON THE NET GAMING REVENUE PROFIT EARNED PREVIOUS TO THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR FROM GAMBLING OPERATED ON EACH WATER VESSEL ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN THE JURISDICTION OF A CITY TO BE PAID TO THAT CITY'S CLERK AND IMMEDIATELY DEPOSITED INTO THAT CITY'S GENERAL FUND; REQUIRING BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY PERSON, COMPANY OR CORPORATION OPERATIG [OPERATING] GAMBLING WITHIN 5 WORKING DAYS AFTER THE FIRST TUESDAY OF DECEMBER OF EACH YEAR TO PAY AN 8% TAX ON THE NET GAMING REVENUE PROFIT EARNED PREVIOUS TO THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR FROM GAMBLING OPERATED ON ALL WATER VESSELS ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN THE STATE TO THE DEPARTMENT OF EDUCATION WITH 50% OF THE 8% NET GAMING REVENUE TAX (LESS ANY DEDUCTION) BEING DIVIDED BY THE NUMBER OF ALL STUDENTS ENROLLED AT ALL PUBLICLY FUNDED K THRU 12TH GRADE SCHOOLS WITH EACH SCHOOL RECEIVING A PAYMENT WITHIN 20 WORKING DAYS AFTER THE FIRST TUESDAY OF JANUARY OF EACH YEAR BY THE DEPARTMENT OF EDUCATION WITHOUT AN APPROPRIATION REQUIREMENT BY THE GENERAL ASSEMBLY BASED ON THE NUMBER OF STUDENTS ENROLLED AT EACH SCHOOL AND 50% OF THE 8% NET GAMING REVENUE TAX (LESS ANY DEDUCTION) BEING DIVIDED BY THE NUMBER OF ALL TEACHERS EMPLOYED AS TEACHERS PREVIOUS TO THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR BY ALL PUBLICLY FUNDED INSTITUTES OF EDUCATION WITHIN THE STATE TO INCLUDE, BUT NOT LIMITED TO K THRU 12, UNIVERSITIES, COLLEGES AND COMMUNITY COLLEGES WITH EACH TEACHER BEING PAID AN EQUAL AMOUNT WITHIN 20 WORKING DAYS FROM THE FIRST TUESDAY OF JANUARY OF EACH YEAR BY THE DEPARTMENT OF EDUCATION WITHOUT AN APPROPRIATION REQUIREMENT BY THE GENERAL ASSEMBLY; EMPOWERING THE DEPARTMENT OF EDUCATION TO PROVIDE A MEANS BY WHICH TO ACCOUNT FOR EACH STUDENT ENROLLED AT ALL PUBLICLY FUNDED K THRU 12TH GRADE SCHOOLS WITHIN THE STATE PREVIOUS TO THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR FOR THE PURPOSE OF PAYING EACH SCHOOL FROM 50% OF THE 8% NET GAMING REVENUE TAX BASED ON THE NUMBER OF STUDENTS ENROLLED AT EACH SCHOOL; EMPOWERING THE LOCALLY ELECTED SHOOL [SCHOOL] BOARDS TO REGULATE THE APPROPRIATE USE OF FUNDS FROM 50% OF THE 8% NET GAMING REVENUE TAX RECEIVED BY THOSE PUBLICLY FUNDED K THRU 12TH GRADE SCHOOLS WITHIN THAT SCHOOL BOARD'S JURISDICTION; EMPOWERING THE DEPARTMENT OF EDUCATION TO DEDUCT THE REASONABLE COSTS AND EXPENSES OF THE DEPARTMENT OF EDUCATION FROM 50% OF THE 8% NET GAMING REVENUE TAX USED TO PAY THOSE PUBLICLY FUNDED K THRU 12TH GRADE SCHOOLS; EMPOWERING THE DEPARTMENT OF EDUCATION TO PROVIDE A MEANS BY WHICH TO ACCOUNT FOR ALL TEACHERS EMPLOYED AS TEACHERS PREVIOUS TO THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR AT ALL PUBLICLY FUNDED INSTITUTES OF EDUCATION WITHIN THE STATE TO INCLUDE, BUT NOT LIMITED TO K THRU 12TH GRADE SCHOOLS, UNIVERSITIES, COLLEGES AND COMMUNITY COLLEGES FOR THE PURPOSE OF PAYING THOSE TEACHERS; EXEMPTING THE AMOUNT PAID FROM 50% OF THE 8% NET GAMING REVENUE TAX TO ANY TEACHER BY THE DEPARTMENT OF FINANCE AND ADMINISTRATION FROM THE STATE TAX ON EARNED INCOME; EMPOWERING THE DEPARTMENT OF EDUCATION TO DEDUCT THE REASONABLE COSTS AND EXPENSES OF THE DEPARTMENT OF EDUCATION FROM 50% OF THE 8% NET GAMING REVENUE TAX USED TO PAY THOSE TEACHERS EMPLOYED AS TEACHERS BY A PUBLICLY FUNDED INSTITUE [INSTITUTE] OF EDUCATION WITHIN THE STATE; REQUIRING BARRY LEE EMIGH, OR HIS HEIRS, THEIR HERIS [HEIRS] AND SO ON, OR ANY OTHER PERSON, COMPANY OR CORPORATION WITHIN 5 WORKING DAYS FROM THE FIRST TUESDAY OF DECEMBER OF EACH YEAR TO PROVIDE THE STATE AUDITOR WITH THE FULL AND COMPLETE COPIES OF THE BOOKS AND ACCOUNTS OF THE GAMBLING OPERATION TO BE AUDITED WITHIN 60 WORKING DAYS FROM THE DATE OF RECEIPT BY THE STATE AUDITOR; REQUIRING THE STATE AUDITOR TO NOTIFY THE GAMBLING OPERATOR BEING BARRY LEE EMIGH, OR HIS HEIRS AND THEIR HERIS [HEIRS] AND SO ON, OR ANY PERSON, COMPANY OR CORPORATION WITHIN 65 WORKING DAYS FROM THE DATE OF RECEIPT OF THE BOOKS AND ACCOUNTS OF THE GAMBLING OPERATION BY THE STATE AUDITOR OF ANY FINANCIAL DEFICIT IN ANY ONE OF THE PAYMENTS OF THE NET GAMING REVENUE TAX PAID TO THE STATE, COUNTY, CITY IF APPLICABLE, THE DEPARTMENT OF EDUCATION AND THE DEPARTMENT OF FINANCE AND ADMINISTRATION OF WHICH FINANCIAL DEFICIT SHALL BE PAID BY THE GAMBLING OPERATOR WITHIN 30 WORKING DAYS AFTER THE DATE OF NOTIFICATION BY THE STATE AUDITOR WITH AN ANNUAL PERCENTAGE RATE OF 9% TO BE PAID ON THE AMOUNT OF DEFICIT NOT PAID AFTER 30 WORKING DAYS; REQUIRING BARRY LEE EMIGH, OR HIS HERIS [HEIRS], THEIR HEIRS AND SO ON, OR ANY OTHER PERSON, COMPANY OR CORPORATION OPERATING GAMBLING WITHIN 5 WORKING DAYS AFTER THE FIRST TUESDAY OF DECEMBER, 2004, TO PAY THE DEPARTMENT OF FINANCE AND ADMINISTRATION 2% OF THE NET GAMING REVENUE PROFIT EARNED PREVIOUS TO THE FIRST TUESDAY OF NOVEMBER, 2004, TO BE DIVIDED BY THE NUMBER OF REGISTERED VOTER'S SIGNATURES COUNTED AS VALID BY THE SECRETARY OF STATE TO PLACE THIS AMENDMENT ON THE REGULAR GENERAL ELECTION WITH EACH CANVASSER BEING PAID WITHIN 20 WORKING DAYS AFTER THE FIRST TUESDAY OF JANUARY, 2005, BY THE DEPARTMENT OF FINANCE AND ADMINISTRATION WITHOUT AN APPROPRIATION REQUIREMENT BY THE GENERAL ASSEMBLY FOR EACH SIGNATURE THE CANVASSER HAS OBTAINED THAT IS COUNTED AS A VALID REGISTERED VOTER'S SIGNATURE BY THE SECRETARY OF STATE TO PLACE THIS AMENDMENT ON THE REGULAR GENERAL ELECTION BALLOT; THE DEPARTMENT OF FINANCE AND ADMINISTRATION SHALL MAKE NO PAYMENT FROM THE 2% NET GAMING REVENUE PROFIT TO ANY CANVASSER FOR THEIR OWN SIGNATURE ON A PETITION COUNTED AS A VALID SIGNATURE BY THE SECRETARY OF STATE TO PLACE THIS AMENDMENT ON THE BALLOT WITH THEIR SIGNATURE ON THAT PETITION AS A CANVASSER; REQUIRING THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO DEDUCT THE REASONABLE COSTS AND EXPENSES OF THE DEPARTMENT OF FINANCE AND ADMINISTRATION FROM THE 2% NET GAMING REVENUE PROFIT USED TO PAY THE CANVASSERS OF THIS AMENDMENT; EXEMPTING THE AMOUNT PAID FROM THE 2% NET GAMING REVENUE PROFIT BY THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO ANY CANVASSER OF THIS AMENDMENT FOR THOSE SIGNATURES OBTAINED BY THE CANVASSERS FROM THE STATE TAX ON EARNED INCOME; REQUIRING THE SECRETARY OF STATE TO PROVIDE THE NAMES OF THOSE CANVASSERS AND THE NAMES OF THOSE REGISTERED VOTER'S SIGNATURES OBTAINED BY THE CANVASSER THAT HAVE BEEN COUNTED AS A VALID VOTER'S SIGNATURE BY THE SECRETARY OF STATE TO PLACE THIS AMENDMENT ON THE REGULAR GENERAL ELECTION BALLOT TO THE DEPARTMENT OF FINANCE AND ADMINISTRATION WITH 30 DAYS AFTER VOTER APPROVAL OF THIS AMENDMENT FOR THE PURPOSE OF PAYING THOSE CANVASSERS; EXCEPT AS SPECIFIED IN THIS AMENDMENT THERE SHALL BE NO OTHER TAX OF ANY KIND LEVIED BY THE STATE ON THE REVENUE DERIVED FROM THE OPERATION OF GAMBLING AND GAMING DEVICES ON ANY WATER VESSEL OPERATED ON ANY NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN THE STATE BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY OTHER PERSON, COMPANY OR CORPORATION; NO PROPERTY TAX, FEES, OR ASSESSMENT OF ANY KIND SHALL BE LEVIED BY THE STATE, OR ANY SUBDIVISION OR AGENCY OF THE STATE THEREOF, ON ANY WATER VESSEL AND THE CONTENTS THEREIN USED FOR THE OPERATION OF GAMBLING ON ANY NAVIGABLE WATER WAYS OR PUBLIC LAKES WITHIN THE STATE OPERATED BY BARRY LEE EMIGH, OR HIS HEIRS, THEIR HEIRS AND SO ON, OR ANY OTHER PERSON, COMPANY OR CORPORATION AS PROVIDED HEREIN; EXEMPTING FOOD ITEMS BEGINNING ON THE FIRST TUESDAY OF DECEMBER, 2002, FROM ANY NEW AND EXISTING GROSS RECEIPT SALES TAXES LEVIED BY THE STATE, AND ANY SUBDIVISIONS OF THE STATE THEREOF, NOT USED FOR THE PURPOSE OF AN EXISTING BOND ISSUE OF WHICH LOSS OF REVENUE SHALL NOT BE REPLACED BY THIS AMENDMENT; DEFINING FOOD ITEMS AS ANY ITEM THAT IS EDIBLE TO INCLUDE DRINKABLE FOOD ITEMS AND VITAMIN SUPPLEMENTS NOT CONTAINING ALCOHOL; EXCLUDING ALL FOOD ITEMS INCLUDED UNDER THE "ARKANSAS SOFT DRINK TAX ACT" AS AUTHORIZED AND DEFINED UNDER A.C.A. SECTION 26-57-901 ET SEQ., AND ANY FOOD ITEMS EXCLUDED FROM THE "ARKANSAS SOFT DRINK TAX ACT" AFTER VOTER APPROVAL OF THIS AMENDMENT FROM THE EXEMPTION OF ANY NEW AND EXISTING GROSS RECEIPT SALES TAXES LEVIED BY THE STATE, AND ANY SUBDIVISION OF THE STATE THEREOF, ON FOOD ITEMS; EXCLUDING ALL FOOD ITEMS PREPARED AND SERVED BY A RESTAURANT, OR OTHER BUSINESSES SIMILAR TO RESTAURANTS SERVING PREPARED FOODS AUTHORIZED, AND DEFINED AS A RESTAURANT, OR SIMILAR BUSINESS IN A.C.A. SECTION 26-75-601 THROUGH -618 AND A.C.A. SECTION 26-75-701 FROM THE EXEMPTION OF ANY NEW AND EXISTING GROSS RECEIPT SALES TAXES LEVIED BY THE STATE, AND ANY SUBDIVISION OF THE STATE THEREOF, ON FOOD ITEMS; EXCLUDING ALL ALCOHOLIC BEVERAGES TO INCLUDE BEER, WINE, LIQUEURS, CHAMPAGNE AND ALL OTHER INTOXICATING BEVERAGES CONTAINING ALCOHOL FROM THE EXEMPTION OF ANY NEW AND EXISTING GROSS RECEIPT SALES TAXES LEVIED BY THE STATE, AND ANY SUBDIVISION OF THE STATE THEREOF, ON FOOD ITEMS; DEFINING THE GROSS GAMING REVENUE PROFIT AS THE AMOUNT OF MONEY EARNED AS A PROFIT FROM GAMBLING AFTER DEDUCTING ANY, AND ALL, GAMING LOSSES WITH ANY AMOUNT OVER THE AMOUNT OF MONEY PAID AS GAMING LOSSES BEING THE GROSS GAMING REVENUE PROFIT; DEFINING GAMING LOSSES AS THE AMOUNT OF MONEY PAID TO ANY PERSON AS A WINNER WITH THAT AMOUNT BEING A LOSS TO THE GAMBLING OPERATOR; DEFINING THE NET GAMING REVENUE PROFIT AS THE AMOUNT OF MONEY EARNED AS A PROFIT FROM THE OPERATION OF GAMBLING AFTER DEDUCTING THE OPERATIONAL COSTS TO OPERATE GAMBLING TO INCLUDE THE COST OF CONTRACTS FOR WORK, CONTRACTS FOR SERVICES, SUBCONTRACTING OF THE GAMBLING OPERATION TO ANY INDEPENDENT CONTRACTOR(S), EMPLOYEE PAYROLL AND BENEFITS, UTILITIES, LEASES OF PROPERTY, INTEREST ON LOANS, COMPLIMENTARY ALCOHOLIC BEVERAGES, ADVERTISING AND PROMOTION, AND ALL FEDERAL TAXES WITH ALLOWANCES FOR CHARITABLE DEDUCTIONS FROM THE GROSS GAMBLING REVENUE PROFIT; DEFINING PUBLICLY FUNDED K THRU 12TH GRADE SCHOOLS AS ANY PUBLICLY FUNDED SCHOOL HAVING ANY ONE, OR MORE, OR ALL, OF THE GRADES OF KINDERGARTEN THRU 12TH GRADES IN ANY COMBINATION OF GRADES; PROVIDING THIS AMENDMENT TO BE SELF EXECUTING; TO PROVIDE THE SEVERABILITY AND TO REPEAL ANY STATUTES AND LAWS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject both your proposed popular name and your proposed ballot title. You have previously made multiple submissions of separate measures on the topics included in the measure at hand. See, e.g., Op. Att'y Gen. Nos. 2001-041, 2001-054 and 2000-280 (and opinions cited therein). The proposal before me reflects a combination of these previous measures. You have thus apparently chosen to combine what appear to be several disparate substantive provisions into one proposal. This does not in itself pose a problem because Amendment 7 to the Arkansas Constitution does not on its face prevent the inclusion of multiple, unrelated provisions in one initiative petition. I must note, however, that your decision to cover these disparate matters in one measure presents significant practical difficulties when it comes to drafting a ballot title and popular name. Indeed, the title and name that you have submitted demonstrate this difficulty. Your proposed ballot title contains 2926 words. This title in my view is clearly insufficient. Cf.,Walker v. Priest, 342 Ark. 410, 426, 29 S.W.2d 657 (2000) (involving a title with 994 words which, according to the court, "staked out the outer limits for length and complexity[.]") I am not suggesting that length should be the only consideration. Id. But in my opinion it is clear that the title you have submitted is unduly long, given the fact that the voter is allowed only five minutes in the voting booth. You have in this instance meticulously covered all of the details of the amendment, and this renders the title unduly long. The inclusion of all of the details many not be necessary to cover the material aspects of the measure. The court in Walker, supra, reiterated the "long-settled rule" that a ballot title is sufficient if it "recites the general purposes of the proposed initiated act" and if it "contains enough information to sufficiently advise electors of the true contents of the proposed act." Id. at 419.
Additionally, the following ambiguities in the text of your proposal must be corrected:
 1. You have not corrected all of the problems pointed out in Opinion 2001-054 with regard to the particular state and local taxes that are to be affected by the exemption for food items. I refer you to that opinion in this regard.
 2. As was also noted in Opinion 2001-054, the exemption of teachers' income from the state income tax (Section 5, subsection 13) could raise constitutional problems.
 3. The definition of "net gaming revenue profit" in Section Eleven, subsection 1(c) raises an ambiguity. This is defined as profit "after deducting the operational costs. . . ." I assume that this is the controlling definition under Section Six with respect to payment of canvassers. However, a seemingly contradictory method of calculating" net gaming revenue profit" appears in the taxation section (Section Five). Because this term is separately defined in the measure, an ambiguity results.
As I have pointed out to you on previous occasions, my office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, Case No. 00-485 (July 7, 2000). The Court concluded: "[i]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under circumstances stated above, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. § 7-9-107
(c). I strongly urge in this regard that you refrain from submitting anyfurther measures until you have obtained legal counsel to assist you indrafting a ballot title and measure that meet the requirements of law.
Sincerely,
MARK PRYOR Attorney General