Mr. Barry L. Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107, of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted various similar measures, some of which I rejected due to ambiguities in the text of your proposed amendments. See
Ops. Att'y Gen. Nos. 2002-208; 2002-118, 2002-102, 2002-077, 2002-042, 2002-026, 2002-001, 2001-380, 2001-358, 2001-341, 2001-173, 2001-110, 2001-095 and 2001-074. My office has revised and certified popular names and ballot titles for three similar measures, as evidenced by Ops. Att'y Gen. Nos. 2002-140; 2001-196; and 2001-129. You have since made additional changes to your measure and have submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT AUTHORIZING BINGO AND RAFFLES BY NONPROFIT ORGANIZATIONS INCORPORATED IN THE STATE, AUTHORIZING THE OPERATION OF GAMBLING BY BARRY LEE EMIGH AND HIS TRANSFEREES, EMPOWERING THE ASSEMBLY TO OPERATE LOTTERIES, TO CALL A SPECIAL SESSION AND PROVIDING A BOARD TO APPOINT COMMISSIONERS
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE WITHOUT LICENSE, OR FEE BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF; EMPOWERING THE GENERAL ASSEMBLY WITHOUT CONSENT OF THE GOVERNOR TO OPERATE LOTTERIES AND COOPERATE TO OPERATE LOTTERIES WITH OTHER STATES WHICH SIGNIFICANTLY CHANGES CURRENT LAWS EFFECTING GAMBLING; AUTHORIZING BARRY LEE EMIGH AND HAROLD GLEN MARTIN AS PARTNERS TO OPERATE, HIRE AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING WITHOUT LICENSE, OR FEE BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF, ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF SEBASTIAN, CRAWFORD, JEFFERSON, PULASKI, GARLAND, MILLER, CRITTENDEN, MISSISSIPPI, BENTON AND OUACHITA WITH SUCH STRUCTURE LOCATED WITHIN THOSE COUNTIES OR WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES WITH THE SALE AND SERVICE OF COMPLIMENTARY ALCOHOLIC BEVERAGES WITHOUT LICENSE, OR FEE BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF, WITHIN THOSE STRUCTURES USED FOR GAMBLING ONLY DURING THE OPERATION OF GAMBLING (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVERAGES IS OTHERWISE PROHIBITED); EXEMPTING THE TRANSFER OF THE GAMBLING OPERATION AND PROPERTY USED FOR GAMBLING WITH OR WITHOUT SALE TO ANY PERSON, COMPANY OR CORPORATION FROM COST OR APPROVAL BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF; PROVIDING FOR THE CONTRACTUAL AGREEMENT OF BARRY LEE EMIGH AND HAROLD GLEN MARTIN AS PARTNERS; REQUIRING THE GAMBLING OPERATOR TO ADMINISTER AND MAKE ALL PAYMENTS TO THE STATE, COUNTY AND CITY, IF APPLICABLE, AND CANVASSERS AS REQUIRED; REQUIRING THE GAMBLING OPERATOR ANNUALLY PAY THE STATE 10%, COUNTY WITHIN WHICH GAMBLING IS OPERATED 5% AND CITY, IF APPLICABLE, WITHIN WHICH GAMBLING IS OPERATED 5% OF THE "NET EARNINGS" EARNED FROM GAMBLING; NO TAX SHALL BE LEVIED BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF, ON THE "GROSS PROFIT" PAID TO THOSE INDEPENDENT SUBCONTRACTOR(S) CONTRACTED TO OPERATE GAMBLING; EXCEPT AS SPECIFIED NO OTHER TAXES OF ANY KIND SHALL BE LEVIED BY THE STATE, OR ANY SUBDIVISION THEREOF, ON THE GAMBLING REVENUE; NO OTHER TAXES, FEES OR ASSESSMENTS OF ANY KIND SHALL BE LEVIED BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF, ON THE STRUCTURE OR CONTENTS THEREIN USED FOR GAMBLING; REQUIRING THE GAMBLING OPERATOR ANNUALLY PAY 34% OF THE "NET PROFIT" TO BE DIVIDED BY AND PAID TO EACH CANVASSER FOR EACH SIGNATURE THE CANVASSERS OBTAINS THAT IS COUNTED AS VALID BY THE SECRETARY OF STATE TO PLACE THIS AMENDMENT ON THE BALLOT WITH SUCH PAYMENTS TRANSFERABLE TO ANY OTHER PERSON; REQUIRING THE GAMBLING OPERATOR WITH SALE OF THE GAMBLING OPERATION PAY 34% OF THE SALE AMOUNT FROM ANY PART, OR WHOLE, OF THE GAMBLING OPERATION, LESS PAY OFF OF DEBITS AND INCURRED EXPENSES, TO BE DIVIDED BY AND PAID TO EACH CANVASSER FOR EACH SIGNATURE THEY OBTAIN THAT IS COUNTED AS VALID BY THE SECRETARY OF STATE TO PLACE THIS AMENDMENT ON THE BALLOT WITH NO FURTHER PAYMENTS FROM THE "NET PROFIT" OF THAT PART, OR WHOLE, OF THE GAMBLING OPERATION SOLD; DEFINING" BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY; DEFINING "RAFFLE" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE BUT SHALL EXCLUDE MONEY AS A PRIZE; DEFINING "GAMBLING" AS THE RISKING OF MONEY BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH GAMES OF CHANCE, SKILL AND ANY COMBINATION THEREOF, BUT SHALL EXCLUDE THE OPERATION OF A LOTTERY, BINGO AND RAFFLES; DEFINING "LOTTERY" AS THE "TYPICAL FORM" OF A LOTTERY CHARACTERIZED BY THE ARKANSAS SUPREME COURT WHICH INVOLVES THE SALE OF A LARGE NUMBER OF CHANCES RELATIVE TO THE SELECTION OF A SMALL NUMBER OF WINNERS BY A DRAWING DETERMINED BY CHANCE ALONE; DEFINING" STRUCTURE" AS ANY KIND AND SIZE OF BUILDING WITH ANY ATTACHED ADDITIONS CONSIDERED A SINGLE STRUCTURE TO INCLUDE ANY KIND AND SIZE OF ANCHORED WATER VESSEL WITH ANY ATTACHED ADDITIONS TO THAT WATER VESSEL CONSIDERED A SINGLE STRUCTURE; DEFINING "GROSS EARNINGS' AS THE AMOUNT OF MONEY AFTER THE DEDUCTION OF MONEY PAID AS A LOSS TO THOSE PERSONS AS WINNERS; DEFINING "NET EARNINGS" AS THE AMOUNT OF MONEY AFTER DEDUCTING THE OPERATIONAL COSTS TO OPERATE GAMBLING FROM THE GROSS EARNINGS; DEFINING "GROSS PROFIT" AS THE AMOUNT OF MONEY AFTER DEDUCTING STATE AND LOCAL PAYMENTS AS PROVIDED HEREIN, AND ANY, AND ALL, FEDERAL TAXES, IF APPLICABLE, FROM THE NET EARNINGS; DEFINING "NET PROFIT" AS THE AMOUNT OF MONEY AFTER DEDUCTING THE AMOUNT PAID TO ANY INDEPENDENT SUBCONTRACTOR(S) CONTRACTED TO OPERATE GAMBLING FROM THE GROSS PROFIT; DEFINING "PROFIT" AS THE AMOUNT OF MONEY AFTER THE PAYMENT TO THE CANVASSERS, OR THEIR TRANSFEREES FROM THE NET PROFIT; DEFINING "GAMBLING OPERATOR" AS BARRY LEE EMIGH AND HAROLD GLEN MARTIN AS PARTNERS, AND THOSE PERSONS, COMPANIES OR CORPORATIONS THE GAMBLING OPERATION IS TRANSFERRED TO WITH OR WITHOUT SALE; DEFINING "GAMBLING OPERATION" AS THE AUTHORITY TO PERFORM THE FUNCTION OF GAMBLING; THE PROVISIONS OF THIS AMENDMENT SHALL TAKE EFFECT IMMEDIATELY UPON PASSAGE OF THIS AMENDMENT EXCEPT AS OTHERWISE PROVIDED; MAKING THE PROVISIONS OF THIS AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. I cannot at this time fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name or ballot title pursuant to A.C.A. §7-9-107(b).
I refer to the following ambiguities:
 • Although you have now clarified that the term "gambling" under your proposed measure does not include bingo and raffles (see Op. Att'y Gen. 2002-208 at 6, noting this ambiguity), the effect of your proposal with respect to existing laws and regulations on gambling remains unclear. This matter was noted in Opinion 2002-208.
 • Section 4 is entitled "PARTNERSHIP" and Paragraph 1 thereof states that the named individuals are "legally contracted by the provisions of this amendment." The meaning of this phrase is unclear. It raises questions about the exact nature and extent of the rights and obligations imposed by the amendment, and to whom the obligation(s) extend. The statement that the named individuals are "both . . . equally and wholly responsible for all aspects of the gambling operation" is also ambiguous. In particular, there is a question concerning individual liability, if any, as well as the rights, if any, of third parties under the amendment. This ambiguity is exacerbated by the reference to "liability." The intended scope of this provision should be clarified to concisely identify the responsibilities and/or liabilities and to whom they extend. Additionally, the absence of any reference to "transferees" in this provision must be noted.
 • As a consequence of the ambiguity surrounding the intended scope of Section 4, Paragraph 1, noted above, the authority under Section 4, Paragraph 4, to "transfer any responsibility and liability" is ambiguous. Again, the "responsibility" and "liability" must be concisely identified for the voter to understand the implications of this transfer authority.
 • Section 4, Paragraph 6 is ambiguous wherein it provides for the appointment of a person in the event of a transfer to more than one heir. It is unclear who must make this appointment. The exact authority of this appointed person is also unclear. He or she is given the "authority of consent to perform the functions of the [transferred] gambling operation." I cannot determine from this language who, if anyone, must provide their consent or what must be consented to. I note, additionally, that the "appointed person" apparently receives profits and sale proceeds, under Paragraphs 7 and 8 of Section 4. I am uncertain, however, whether you intend for the "appointed person" to receive these amounts individually. This also requires clarification for proper reflection in the ballot title.
 • Section 4, Paragraphs 7 and 8, makes no reference to transferees in connection with payment of "profit" or payment to canvassers. If this was an oversight, it should be corrected.
 • Section 5, Paragraph 4 refers to a deficit payment being "contested" and Section 5, Paragraph 5 authorizes an independent accounting as a means of resolving a contest with respect to any deficit payment as determined by the State Auditor. Specifically, this latter provision states that the gambling operator" can submit" the books and accounts for an accounting as a "final resolution." Apparently, this is a discretionary procedure. There appears to be no other provision concerning the procedure and resolution of a contested deficit payment.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP/cyh