Ms. Judy Evans Post Office Box 1083 Hope, AR 71802-1083
Dear Ms. Evans:
You have requested certification, pursuant to A.C.A. § 7-9-107, of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution:
 Popular Name AN AMENDMENT TO REPEAL ARKANSAS LAW PROHIBITING LOTTERIES AND THE SALE OF LOTTERY TICKETS; ALLOWING LOTTERIES THAT BENEFIT PUBLIC SCHOOL EDUCATION AT LEAST 50% AND ALLOW THE SALE OF THOSE LOTTERY TICKETS; AUTHORIZE THE GENERAL ASSEMBLY TO ENACT LEGISLATION THAT WOULD CREATE A STATE-WIDE LOTTERY TO BENEFIT PUBLIC SCHOOL EDUCATION AND OTHER, WITH REGULATION OF LOTTERIES BY THE GENERAL ASSEMBLY
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO: 1) REPEAL ARKANSAS CONSTITUTION ARTICLE 19, SECTION 14 WHICH PROHIBITS LOTTERIES AND THE SALE OF LOTTERY TICKETS; 2) ALLOW LOTTERIES THAT BENEFIT PUBLIC SCHOOL EDUCATION BY AT LEAST 50% AFTER LEGITIMATE EXPENSES, ALLOW THE SALE OF THOSE LOTTERY TICKETS AND PROHIBIT THE SALE OF LOTTERY TICKETS, EXCEPT THOSE THAT BENEFIT ARKANSAS PUBLIC SCHOOL EDUCATION BY AT LEAST 50% (AFTER LEGITIMATE EXPENSES), WITH ALLOWED LOTTERIES TO BE REGULATED BY THE GENERAL ASSEMBLY; AUTHORIZE THE GENERAL ASSEMBLY TO ENACT LEGISLATION THAT WOULD CREATE A STATE-WIDE LOTTERY TO BENEFIT PUBLIC SCHOOL EDUCATION BY 50% (LESS LEGITIMATE EXPENSES); 4) ALLOCATE LOTTERY PROCEEDS (LESS LEGITIMATE EXPENSES) FOR 3 ABOVE AS FOLLOWS: 50% TO KINDERGARTEN THROUGH TWELFTH GRADE PUBLIC SCHOOL EDUCATION, 25% TO COLLEGE SCHOLARSHIPS, 15% TO ARKANSAS CHILDREN'S HOSPITAL FOR RESEARCH AND/OR CARE OF UNINSURED PATIENTS, AND 10% TO THE STATE AS GENERAL REVENUE
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot at this time fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. §7-9-107(b).
I refer to the following ambiguities:
 • Although the intent of Section 1(A) (the repealer section) is fairly clear, I note that the wording of this section does not constitute a complete sentence. This fact could give to confusion as to whether it is intended to serve merely as a heading, or whether it carries substantive content. If the intent is to amend the Arkansas Constitution, that intent should be clearly stated.
 • Section 2 of the proposed measure gives rise to confusion concerning which lotteries are prohibited and which are" allowed." Because the General Assembly is authorized to regulate "allowed" lotteries, it appears that the determination that a lottery is "allowed" must be made at the inception of any given lottery, before the General Assembly can begin to regulate it. Yet it is unclear how this determination is to be made and by whom. Whether a particular lottery is "allowed" seems to turn on how the proceeds of the lottery are spent, which of course would not be known until after a lottery has already been in operation. Directly related to this issue is the question of the extent to which the General Assembly is authorized to regulate. It is unclear whether the intent is for the General Assembly to enact laws — beyond those stated in the text of your measure — that would govern which lotteries are allowed and which are not — laws addressing such issues as permit requirements and bonding requirements. As currently drafted, it is unclear whether the measure is self-executing (in which case any sponsor of any lottery could begin operation immediately upon passage of the measure), or whether the General Assembly must enact laws before any lottery can begin operation.
 • Section 2 of the proposed measure also gives rise to confusion concerning the meaning of the verb "benefit," as used therein. This provision of the measure appears to permit lotteries "that benefit Arkansas public school education by at least 50% (less legitimate expenses)." It is unclear precisely what it means to "benefit" public education. More particularly, this terminology raises questions concerning the allocation and administration of the funds. Among these questions are: whether these funds would be first placed in the state treasury and later divided among the schools; whether the funds are to be paid directly to the schools, and if so, who is to administer this direct distribution; whether the funds are to be allocated equally among the schools or on some other basis; whether it will be permissible for the funds to be paid to some other entity to be handled for the benefit of the public schools; how the amounts required to be distributed are to be reported, accounted for, and monitored; how payment would be enforced; whether the grant of authority to the General Assembly to "regulate" lotteries is intended to permit the General Assembly to choose among any of these options; and what changes the provision is to bring about in current laws concerning school funding. A related problem is the fact that the term "legitimate expenses" is not defined, and it is not clear whether the General Assembly is intended to have the authority to define the term.
 • Similar problems to those discussed above concerning the verb "benefit" arise in Sections 3 and 4 of the measure concerning the use of that term, and concerning the allocation and administration of the percentages that are earmarked for college scholarships, Arkansas Children's Hospital, and the State's general revenue.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General