Mr. Michael J. Wasserman Arkansas Resorts Hotels, Inc. 391 CR 214 Gainesville, TX 76240
Dear Mr. Wasserman:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed amendment to the Arkansas Constitution, as follows:
Popular Name
 AN AMENDMENT TO ESTABLISH A STATE LOTTERY; TO ALLOW ARKANSAS RESORTS HOTELS, INC. TO OWN AND OPERATE SEVEN CASINO GAMING ESTABLISHMENTS ONE EACH IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN, BOONE AND JEFFERSON COUNTIES; AND TO ESTABLISH THE ARKANSAS EDUCATIONAL TRUST FUND AND THE ARKANSAS GAMING COMMISSION
 Ballot Title
 AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO: 1) ESTABLISH A STATE-RUN LOTTERY, TO BE OPERATED AND REGULATED BY THE ARKANSAS GAMING COMMISSION; AND 2) IMMEDIATELY AUTHORIZE SEVEN CASINO GAMING ESTABLISHMENTS, TO BE OWNED AND OPERATED BY "ARKANSAS RESORTS HOTELS, INC." (A PRIVATE FOR-PROFIT CORPORATION), ONE EACH TO BE LOCATED IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN, BOONE AND JEFFERSON COUNTIES, THE OPERATIONS OF WHICH SHALL BE AUDITED BY THE ARKANSAS GAMING COMMISSION FOR THE SOLE PURPOSE OF INSURING THAT CASINO TAXES ARE PAID, BUT WHICH SHALL NOT OTHERWISE BE REGULATED BY THE GAMING COMMISSION; REQUIRING THE GENERAL ASSEMBLY TO ENACT LEGISLATION SO THAT THE STATE LOTTERY MAY BEGIN AT THE EARLIEST POSSIBLE TIME, BUT PROHIBITING THE GENERAL ASSEMBLY FROM ENACTING ANY LEGISLATION REGARDING CASINO GAMING; PROHIBITING CASINO GAMING IN ANY OTHER COUNTY OR AT ANY OTHER THAN THE LOCATIONS OPERATED BY ARKANSAS RESORTS HOTELS, INC; PROHIBITING PERSONS UNDER THE AGE OF 21 FROM PURCHASING LOTTERY TICKETS OR PARTICIPATING IN CASINO GAMING; REQUIRING AT LEAST 50% OF STATE LOTTERY REVENUE TO BE DISTRIBUTED AS PRIZES, AT LEAST 45% OF LOTTERY REVENUE TO BE PAID TO THE ARKANSAS EDUCATIONAL TRUST FUND AND NO MORE THAN 5% FOR THE EXPENSES OF THE LOTTERY; REQUIRING THAT THE GROSS GAMING REVENUE (AS DEFINED) OF A CASINO SHALL BE SUBJECT TO THE GROSS RECEIPTS TAX LEVIED BY THE TAXING JURISDICTIONS WHERE A CASINO IS LOCATED AT THE SAME RATE AS FOR BUSINESSES GENERALLY, AND OF THE AMOUNTS OF SAID TAX PAID TO THE STATE THEY SHALL BE ALLOCATED AS FOLLOWS: 80% TO THE STATE'S GENERAL FUND FOR THE PURPOSE OF REDUCING OR ELIMINATING THE GROSS RECEIPTS TAX ON PRESCRIPTION MEDICATIONS AND ON FOOD PURCHASED IN A RETAIL FOOD STORE, WITH ANY EXCESS RETURNED TO THE GENERAL FUND, 15% TO THE ARKANSAS EDUCATIONAL TRUST FUND; 5)% [SIC] TO THE STATE'S GENERAL FUND FOR THE OPERATIONAL COSTS OF THE ARKANSAS GAMING COMMISSION; PROHIBITING THE GENERAL ASSEMBLY FROM REDUCING LOCAL OR STATE FUNDING BECAUSE OF CASINO TAX REVENUE; PROHIBITING ANY OTHER STATE OR LOCAL TAXES, FEES OR ASSESSMENTS ON THE FURNITURE, FIXTURES, EQUIPMENT, PROPERTY, BUSINESS OPERATIONS, GROSS REVENUES, GROSS GAMING REVENUES, OR INCOME OF ARKANSAS RESORTS HOTELS, INC., DERIVED FROM OR USED IN CASINO GAMING WHICH ARE NOT LEVIED AGAINST BUSINESSES GENERALLY; ESTABLISHING THE ARKANSAS EDUCATIONAL TRUST FUND, ALLOCATED AND ADMINISTERED BY THE DEPARTMENT OF EDUCATION, TO PROVIDE GRANTS TO QUALIFIED HIGH SCHOOL GRADUATES FOR POST-SECONDARY EDUCATION; DEFINING POST-SECONDARY EDUCATION AS THE PURSUIT OF AN UNDERGRADUATE DEGREE AT A PUBLIC OR PRIVATE UNIVERSITY, COLLEGE, COMMUNITY COLLEGE OR A DEGREE FROM A VOCATIONAL-TECHNICAL SCHOOL; REQUIRING NOT LESS THAN 24% OF THE EDUCATIONAL TRUST FUND TO BE USED TO EXPAND PRE-KINDERGARTEN EDUCATIONAL PROGRAMS AND TUTORIAL PROGRAMS FOR PRIMARY AND SECONDARY STUDENTS; CREATING THE ARKANSAS GAMING COMMISSION, WHOSE MEMBERS SHALL BE APPOINTED BY THE GOVERNOR WITH THE ADVICE AND CONSENT OF THE SENATE, WHO SHALL: 1) ESTABLISH AND OPERATE THE STATE LOTTERY; AND 2) AUDIT THE OPERATIONS OF THE CASINOS FOR THE SOLE PURPOSE OF INSURING THAT ALL CASINO TAXES ARE PAID; PROVIDING FOR JUDICIAL REVIEW OF THE COMMISSION'S DECISIONS OR ACTIONS; ALLOWING A CASINO TO OPERATE ANY DAY FOR ANY PORTION OF THE DAY; ALLOWING THE SELLING OR FREE FURNISHING OF ALCOHOLIC BEVERAGES IN CASINOS DURING ALL HOURS THEY OPERATE BUT OTHERWISE REQUIRING ADHERENCE TO ALL ALCOHOLIC BEVERAGE CONTROL BOARD REGULATIONS; PERMITTING THE SHIPMENT OF GAMBLING DEVICES INTO AUTHORIZED COUNTIES FOR PURPOSES OF FEDERAL LAW; RENDERING THE PROVISIONS OF THE AMENDMENT SEVERABLE; DECLARING INAPPLICABLE ALL CONSTITUTIONAL PROVISIONS AND LAWS TO THE EXTENT THEY CONFLICT WITH THE AMENDMENT; AND DECLARING THE AMENDMENT OPERATIVE UPON PASSAGE.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular name and ballot title reflects our view of the merits of the proposal because this Office has been given no authority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. SeeArkansas Women's Political Caucus v. Riviere, 282 Ark. 463, 466,677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device.Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v.Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v. Hall,229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall,229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v. Riviere,270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988);Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v.McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke.Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71
(1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104
(1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. Changes to your ballot title may be necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. §7-9-107(b).
I refer to the following ambiguities:
 1. Section 3.1 of your measure states that "The Arkansas Educational Trust Fund is hereby established." A later provision of your measure (§ 3.8) states that the "trust funds shall be allocated and administered by the Arkansas Department of Education." These provisions are ambiguous as to whether this fund is created as a state treasury fund or as a fund outside the state treasury. The status of the fund will determine the applicability of certain other provisions of state law, including appropriation requirements. As a consequence, it may give the voters serious ground for reflection. I cannot certify a ballot title on this point without clarification of the ambiguity. (Cf. Op. Att'y. Gen. 2000-120 (declining to certify ballot title where measure did not indicate whether" trust fund" was created within the state treasury).
 2. Section 3.3 of your measure defines a "qualified high school graduate" for purposes of determining eligibility for grants to such graduates for post-secondary education. The term is defined in § 3.3 as "an individual who has graduated from an accredited Arkansas High School including any student who graduates from an accredited public high school in a bordering state, and whose education has been paid for by the State of Arkansas, and who has been a resident of the State of Arkansas for at least one year prior to graduation." An ambiguity arises, in my judgment, as to whether the final clause of this definition modifies only the out-of state graduate's eligibility, or also the eligibility of graduates of accredited Arkansas high schools. It is difficult to determine this issue from the current wording and punctuation. I assume as an initial matter that "an accredited Arkansas High School" would include any accredited public or private high school in Arkansas. The next portion of the definition refers to "any student who graduates from an accredited public high school in a bordering state. . . ." I assume this definition, along with the first succeeding clause "and whose education has been paid for by the State of Arkansas," refers to the contractual arrangement with an adjoining state mentioned in Act 2131 of 2005, § 1 (Item 33) and § 9, which refer to Arkansas students residing in a portion of an Arkansas school district separated from the rest of the district by a reservoir. I am uncertain, however, as to whether the second succeeding clause, "and who has been a resident of the State of Arkansas for at least one year prior to graduation" refers back only to the students graduating from the out-of-state high school, or also to the students graduating from Arkansas high schools. In short, I cannot determine whether graduates of Arkansas high schools must meet the durational residency requirement in order to be eligible for a grant, or whether this language refers only to the out-of-state graduates you describe.
 3. Section 3.6 of your measure states that: "No individual may be eligible for scholarship for more than four academic years unless extended for good cause as determined by the Arkansas Educational Trust Fund." A question arises as to who would make this determination. Your measure does not establish the "Trust Fund" as a decision-making entity. It is merely referred to as a "fund" into which revenues are deposited. I am thus uncertain as to how this provision should be summarized in a ballot title for your measure.
 4. Section 4.1 of your measure creates the "Arkansas Gaming Commission" to establish and operate a state lottery, and which shall "license and regulate charitable bingo and raffles." Your measure mentions bingo and raffles briefly in this provision and in the remainder of your measure. See § 4.2 (preventing anyone with an interest charitable bingo or raffle operations from being appointed to the Arkansas Gaming Commission); § 7.1 (prohibiting any person under the age of 21 from participating in bingo or raffles); and § 12.1 (requiring the General Assembly to enact legislation so that charitable bingo and raffles may begin at the earliest possible time). Your proposed ballot title, however, does not mention charitable bingo and raffles at all, an omission which must be remedied prior to the certification of a ballot title for your measure.
 5. Section 5.1 of your measure provides for allocation of the revenues from the statewide state-run lottery. Section 5.1 contains four subsections in this regard, subsections (a) through (d). Subsection (d) of that provision states that: "Any surplus after lottery expenses as stated in paragraph (a)3 above have been paid; shall be returned to the Arkansas State General Fund." Two ambiguities arise from this language. First, I am uncertain concerning the reference to "paragraph (a)3 above." As noted earlier, there are four subsections under Section 5.1, subsections (a) through (d). I am uncertain, therefore, to what paragraph this language refers, although it appears it may be a typographical error and the correct reference is to subsection (c). Second, the reference to the "Arkansas State General Fund," which is echoed in Section 6.2(a), creates an ambiguity. (Your measure also refers in Section 6.2(a) and (c) to the "State's general fund.") There are, according to my research no existing state funds designated by these exact names. See in this regard A.C.A. §§ 19-5-202 to -311 (Repl. 1999 and Supp. 2005) (delineating state general revenue funds and fund accounts).
 6. Section 6.2 of your measure allocates the gross receipts taxes paid to the state by individual casinos. Subsection (a) of this section provides that: "Eighty percent (80%) shall be paid to the State's general fund for the purpose of reducing or eliminating the gross receipts tax on prescription medications and on food purchased in a retail food store." It may be your intention, although it is not stated, to leave the specifics of how and when this will be accomplished to the General Assembly. I cannot determine this matter from the current wording, however, and am thus uncertain what language a certified ballot title for your measure should contain in this regard. In addition, this provision is ambiguous as to whether only the state gross receipts tax on food and medicine will be eliminated, or whether local gross receipts taxes on food and medicine will be eliminated as well. Although it's fairly clear that Section 6.2(a) only allocates state gross receipts tax revenues collected as a result of casino operations (local authorities will presumably be able to use their local gross receipts tax revenues from casino operations for the purposes previously authorized by their local voters), the reference to the reduction or elimination of gross receipts taxes on food and medicine with those state revenues is less clear. Are the state gross receipts revenues collected on casino operations to be used to eliminate both state and local gross receipts taxes on food and medicine, or just the state gross receipts tax on these items? These issues may give the voters serious ground for reflection and as a consequence, must be fairly summarized in a ballot title for your measure.
 7. Section 6.4 of your measure states that: "The General Assembly shall not reduce funding to any political subdivision or program of Arkansas due to revenues received, or estimated to be received, from the tax contained in Section 6(a) above." I assume, as an initial matter, that this language has reference to Section 6. 2 or 6. 2 (a). This provision reads as a so-called" non-supplanting" provision, indicating that the new revenues collected on gross receipts of casino gaming operations shall be over and above current funding levels for political subdivisions and state programs. An ambiguity arises from this language, however, in light of Section 6(a)'s mandate that the funds at issue be used to "reduc[e] or eliminat[e] the gross receipts tax on prescription medications and on food purchased in a retail store." It appears, under Section 6.2(a) of your measure, that the state will be mandated to" reduce funding" for any state programs now supported by the gross receipts tax on food and medicine, because those revenues will eventually cease to exist under your measure and are to be replaced under your measure by the revenues produced from state gross receipts taxes on casinos. I am uncertain, therefore, as to how to summarize this portion of your measure in a ballot title.
 8. Section 12.1 of your measure provides that "[T]he General Assembly shall not enact any legislation regarding casino gaming except as specifically authorized by this amendment." Although this language is not ambiguous on its face and your measure makes fairly clear in § 6.3 the extent of the authority of the state and political subdivisions to tax Arkansas Resorts Hotels, Inc., Section 12.1 may leave open the question of the authority of political subdivisions to regulate in any manner the operation of casino gaming. For example, although Section 2.1 of your measure states that casino gaming "shall be lawful and shall be considered an appropriate land use" in the enumerated counties, questions may arise as to whether this language, in conjunction with Section 12.1, leaves to local political subdivisions regulatory authority over any number of matters (for example, zoning), that would apply to other businesses.
 9. Section 13.1 of your measure states that "[T]he Amendment shall be self-executing and shall take effect and become law on the date approved by a majority of the votes cast thereon and shall become operative on such date." An ambiguity arises from the "self-executing" language of this section when read in conjunction with the language of the immediately preceding Section 12.1, stating that: "[T]he General Assembly shall enact legislation so that the statewide state-run lottery and charitable bingo and raffles may begin at the earliest possible time." It appears from the text of this provision that your measure is not "self-executing" at least as regards the state lottery, charitable bingo and raffles. The reference in Section 13.1 to this effect is therefore misleading. Cf. Ops. Att'y. Gen. 2002-346 and 2000-121 (concluding that similar references were misleading).
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Robertsv. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title.See A.C.A. § 7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General
MB/cyh
Enclosure