Mr. Kerry M. Hicks, Chairman Campaign for Comprehensive Legal Reform Post Office Box 54 Oden, Arkansas 71961 Dear Mr. Hicks:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed constitutional amendment. Your popular name and ballot title are as follows:
Popular Name
The Comprehensive Legal Reform Amendment of 2008
Ballot Title
AN AMENDMENT TO THE ARKANSAS CONSTITUTION REPEALING CONSTITUTIONAL AMENDMENT 28, DISSOLVING THE ARKANSAS SUPREME COURT COMMITTEE ON THE UNAUTHORIZED PRACTICE OF LAW, THE COMMITTEE ON PROFESSIONAL CONDUCT, AND THE JUDICIAL MISCONDUCT AND DISABILITY COMMISSION; PROHIBITING THE ARKANSAS SUPREME COURT FROM FORMING, MAINTAINING, OR SUPPORTING ANY JUDICIAL, QUASI-JUDICIAL, EXTRA-JUDICIAL, OR INVESTIGATORY BODY FOR THE PURPOSE OF DEFINING THE PRACTICE OF LAW OR SEEKING TO ADMINISTER OR ENFORCE COURT CREATED RULES UPON UNITED STATES CITIZENS WHO ARE NOT LICENSED ATTORNEYS AT LAW; PROHIBITING THE PRACTICE OF LAW OR THE HOLDING OF A LICENSE TO PRACTICE LAW BY ALL MEMBERS OF THE GENERAL ASSEMBLY, THE GOVERNOR, THE LIEUTENANT GOVERNOR, AND OTHER CONSTITUTIONALLY ELECTED OFFICERS OF THE EXECUTIVE OR LEGISLATIVE BRANCHES OF GOVERNMENT WHILE HOLDING THE SAID OFFICE; PROVIDING A TWO YEAR TERM OF OFFICE FOR ALL JUDICIAL OFFICERS, INCLUDING THE OFFICE OF JUSTICE OF THE ARKANSAS SUPREME COURT, AND LIMITING THE TERM OF OFFICE FOR ALL SUPREME COURT JUSTICES, WITH ALL JUDICIAL ELECTIONS FOR ALL JUDICIAL OFFICES COMMENCING IN THE ELECTION OF 2010; PROVIDING THAT A LICENSE TO PRACTICE LAW SHALL NOT BE REQUIRED TO HOLD THE OFFICE OF SUPREME COURT JUSTICE; PROVIDING THAT A LICENSE TO PRACTICE LAW SHALL NOT BE REQUIRED TO PETITION THE GOVERNMENT FOR REDRESS, NOR FOR ASSISTING ANY COMPETENT PERSON IN PETITIONING THE GOVERNMENT FOR REDRESS AND PROHIBITING *Page 2 
DISCRIMINATION AGAINST ANY SAID PERSON; ALLOWING OUT OF STATE ATTORNEYS TO PARTICIPATE AND ADVOCATE IN ARKANSAS CASES, BUT FOR GOOD CAUSE SHOWN; VESTING THE GENERAL ASSEMBLY WITH THE DUTY TO PROSCRIBE ALL LAWS REGARDING THE PRACTICE OF LAW, ADMISSION TO THE BAR, AND THE PROFESSIONAL CONDUCT OF ATTORNEYS AT LAW IN A NON-DISCRIMINATORY MANNER; ESTABLISHING AND FUNDING AN AUTONOMOUS OFFICE OF PUBLIC ADVOCACY FOR THE PURPOSE OF ADVOCATING THE STATE'S STRICT COMPLIANCE WITH STATE AND FEDERAL LAWS ON BEHALF OF THE UNITED STATES CITIZENS OF THE STATE OF ARKANSAS; REQUIRING AUDIO/VISUAL RECORDING OF ALL PROCEEDINGS IN COURTS OF RECORD; ESTABLISHING A RIGHT OF PERSONS OR ENTITIES TO SUE UNDER THIS AMENDMENT, AND WAIVING IMMUNITY IN SUCH SUITS
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular name and ballot title reflects our view of the merits of the proposal because this Office has been given no authority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's Political Caucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, *Page 3 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen,318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen,303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v. McCuen, 296 Ark. 513,758 S.W.2d 403 (1988); Hoban v. Hall, supra; and Walton v. McDonald,192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654,841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen, 318 Ark. 241,884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen,303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558,339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
Section 1A of your proposed measure provides:
Amendment 28 to the Arkansas Constitution is hereby repealed and the Arkansas Supreme Court Committee on the Unauthorized Practice of Law, the Committee on Professional Conduct, and the Judicial Misconduct and Disability Commission are hereby dissolved, and discrimination by any court, any prosecutor, or any licensed attorney against any party to any suit or against any person assisting any party in any suit who is not an Arkansas licensed attorney at law is strictly prohibited and actionable in a civil suit under this amendment.
This provision is ambiguous in various respects. First, it is unclear how the proscription against discrimination by the court or officers of the court in any way changes current law. It is further unclear whether the need to set forth this proscription is in any sense mandated by the dissolution of the recited committees and the repeal of Amendment 28, which authorizes the Arkansas Supreme Court to regulate the practice of law and the *Page 4 
conduct of attorneys. In addition, the syntax of this provision is confusing in prohibiting "discrimination . . . against any party to any suit or against any person . . . who is not an Arkansas licensed attorney at law . . . ." Is this provision meant to imply that a court or its officers may discriminate against an individual who is a licensed Arkansas attorney? Finally, you have provided no details regarding the nature of the "civil suit" this provision is intended to authorize. It is unclear precisely what the cause of action would be and what damages would be available in any such suit. Given these ambiguities, I am unable to summarize the provisions of this subsection in a ballot title.
Section 1B of your proposed measure provides:
No attorney at law duly licensed in any other state shall be prohibited from participating in any suit brought in this state, but for good cause.
This provision is likewise ambiguous in several respects. First, although I assume that the phrase "participating in any suit" denotes participation as an attorney and not as a party, this conclusion is far from inescapable. Secondly, the provision is totally silent regarding what might constitute "good cause," leaving me unable to summarize this subsection in a ballot title.
Subsection 1C of your proposed measure provides as follows:
The Arkansas Supreme Court is hereby prohibited from forming, maintaining, or supporting any judicial, quasi-judicial, extra-judicial, or investigative body whose purpose is, in whole or in part, to define the practice of law or to seek to administer or enforce court created rules or regulations upon citizens of the United States who are not licensed attorneys at law.
This provision is ambiguous in that it is unclear what would be the scope of the proposed restriction upon the court's "administer[ing] or enforc[ing] court created rules or regulations upon citizens of the United States who are not licensed attorneys at law." The recited passage suggests by negative implication that there might be court created rules or regulations" upon citizens who are "licensed attorneys at law" — a suggestion that appears inconsistent with the opening clause of this provision, which might be read as divesting the supreme court of any oversight responsibility over attorneys. It is unclear what you mean by purporting to proscribe the supreme court from "defin[ing] the practice of law." Is this simply a proscription against setting the standards for attorney licensure, or is it a blanket proscription against the court's monitoring any sort of legal activity — including, presumably, its own? Without clarification, I cannot accurately summarize this provision in a ballot title.
Subsection 1E of your proposed measure provides:
Beginning with the election year 2010, the term of office for all elected judges and justices in this state, including the Arkansas Supreme Court, shall be for two years, and each said official may succeed himself two times. The election of justices of the Supreme *Page 5 
Court shall thenceforth not be staggered and in non-partisan elections the seven candidates for the Arkansas Supreme Court receiving the greatest number of popular votes shall be considered elected to the said office.
This provision leaves unaddressed what procedures would apply in the event of a vacancy in a judicial office. I am consequently unable to summarize in a ballot title how the selection of judges and justices would proceed.
Subsection 1F of your proposed measure provides:
The legislature shall have the non-delegable duty to make all laws regarding the professional conduct of attorneys at law, the duty to proscribe, with particularity, the manner and limitations of attorney discipline and admission to the Bar, consistent with the due process and equal protection standards of the United States Supreme Court, and the duty to seek the impeachment of any elected judicial officer in this state, including any justice of the Supreme Court, for misconduct, nonfeasance, malfeasance, or for any actions in retribution against any citizen of the United States, including any licensed attorney at law, within the jurisdiction of Arkansas.
This provision is ambiguous in that the phrase "duty to proscribe" is inconsistent with what appears to be your intent to charge the legislature with a duty to prescribe rules of judicial conduct and discipline.
Finally, it is unclear what the referenced "actions in retribution against any citizen of the United States" means. Without clarification as to what "retribution" might entail, I am unable to summarize this provision in a ballot title.
Section 2A of your proposed measure provides for the creation of an "Office of the Public Advocate," whose occupant would initially be appointed by the governor with the approval of a majority of both houses of the legislature, following which the Public Advocate would be elected to two-year terms beginning in 2010. This provision leaves unaddressed what procedures would apply in the event of a vacancy in the office. I am consequently unable to summarize in a ballot title how the selection of the Public Advocate would proceed.
Section 2B of your proposed measure would charge the Public Advocate with the responsibility to:
Investigate and prosecute all acts of misconduct or corruption by any member of the state or federal government in this state and to assure, through public education, litigation, and other lawful means that citizens of the United States within the legal jurisdiction of this state are protected in their state and federal rights, privileges, and immunities from acts and omissions by the government of this state and persons acting on behalf of the government of this state or the United States.
Your reference in this passage to assuring U.S. citizens their "rights, privileges, and *Page 6 
immunities" is cryptic to the point that I cannot summarize its import for the voters. The Privileges and Immunities Clause contained in U.S. Const. art. IV, § 2 provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the Several States." See also U.S. Const. amend. 14, § 1 and Ark. Const. art. 2, §§ 3 and 18. Inasmuch as your submission, if adopted, would purport to dispense with judicial oversight over a variety of areas traditionally monitored by the highest tribunals in the various states, I cannot summarize how you intend your proposed measure to secure privileges and immunities recognized in sister states.
This provision is further ambiguous in that it fails to address how, if at all, this purported grant of sweeping authority to a state official might be impacted by the supremacy clause of the U.S. Constitution, which empowers the Congress to preempt state laws in instances when it wishes to locate the enforcement of federal laws in federal officials who are primarily subject to federal oversight. In particular, for instance, you fail to address the relationship between the Office of Public Advocate and the U.S. Attorney's Office, ignoring altogether the instances in which the U.S. Attorney would have exclusive enforcement jurisdiction. I consequently cannot adequately summarize this provision in a ballot title.
Subsection 2C of your proposed measure would charge the Public Advocate with the responsibility to:
Assure that no civil servant in this state is disciplined or discharged from his or her duties without reasonable notice and an opportunity to be heard by a neutral and detached hearing body, or for reasons that are otherwise discriminatory or prejudicial.
This provision is ambiguous in that it fails to address how the administration of the expressed due-process guarantee would relate to existing administrative and judicial review procedures such as those set forth in the Administrative Procedures Act, A.C.A. §§ 25-15-201
through-218 (Repl. 2002 Supp. 2005). I cannot adequately summarize this proposal because it fails to clarify how the measure's adoption would affect existing procedures.
Subsection 2D of your proposed measure would charge the Public Advocate with responsibility to:
Assure that in all legal disputes involving the custody of a minor child, that the said child and each parent are represented in their interests by separate competent counsel, and that counsel be appointed by the court or provided by the Office of the Public Advocate to parties who cannot afford counsel.
This provision is ambiguous in that it fails to provide any guidance regarding when counsel for indigent parties would be "appointed by the court" and when "provided by the Office of the Public Advocate." The provision is further unclear in that it fails to address how the Public Advocate would ensure that non-indigent parties to a custody dispute would be represented "by separate competent counsel." I am consequently unable *Page 7 
adequately to summarize this provision in a ballot title.
Subsection 2E of your proposed measure would charge the Public Advocate with responsibility to:
Develop and maintain a Division of Statistical and Legal Research to provide statistical and legal research information and education to the general public and to develop and maintain a computer database of court proceedings and county and state expenditures throughout the state.
This provision is ambiguous in that it fails to specify what sort of "statistical . . . research information" the Public Advocate would be charged with maintaining. The provision further fails to address how, if at all, the measure would affect other agencies that currently compile "statistical . . . research information," including records of "county and state expenditures throughout the state." I am consequently unable adequately to summarize this provision in a ballot title.
Subsection 2F of your proposed measure would charge the Public Advocate with responsibility to:
Maintain a record of all Consent Decrees entered into by the government of Arkansas and, by request of the aggrieved party or upon the Public Advocate's own initiative, assure that all Decrees so entered into by the State are adhered to by the State.
This provision is ambiguous in that it fails to address what would be the role of the court having jurisdiction of the case in the first instance. Under the current system, the court would retain ongoing jurisdiction to ensure compliance with a consent decree. Without knowing the implications of this provision for the court having jurisdiction over the underlying action, I cannot adequately summarize the provision in a ballot title.
Subsection 4A of your proposed measure provides:
The Public Advocate shall have the authority to investigate all acts of corruption, malfeasance, misfeasance, nonfeasance, discrimination against and by state officials and state employees, including all constitutionally elected officers in the state, and to prosecute, sue, or seek administrative discipline in behalf of the public interest.
This provision is ambiguous in that it fails altogether to specify what sort of prosecution, suit or administrative discipline the Public Advocate might pursue in support of his enforcement authority. This provision totally fails to address the relationship between the Public Advocate and entities currently in place to monitor official misconduct. The provision is further vague in its reference to "discrimination against and by state officials and state employees." I am consequently unable adequately to summarize this provision in a ballot title.
 Subsection 4F of your proposed measure provides: *Page 8 
The Public Advocate shall have authority concurrent with, but superior to, all prosecuting attorneys in this state.
This provision is ambiguous in that it is unclear how a Public Advocate could have both "concurrent" and "superior" authority to a prosecuting attorney. The provision fails to address, for instance, how a Public Advocate's "superior" authority might manifest itself in an instance where there might be a disagreement regarding whether to pursue a prosecution.
Subsection 4G of your proposed measure provides:
The Public Advocate shall have authority to offer and pay rewards of up to $500 for information leading to the indictment and conviction of any state official for violation of any criminal statute, and to offer and grant immunity from prosecution to any person whose testimony is considered necessary to the Public Advocate's prosecution of any state official for violation of any criminal statute.
This provision is ambiguous in that it is unclear whether the Public Advocate's authority to grant immunity from prosecution will be totally autonomous or, as is presently the case, see A.C.A. § 16-43-605 (Repl. 1999), the prosecutorial power to grant immunity will be subject to court approval. I am consequently unable adequately to summarize this provision in a ballot title.
Subsection 6A of your proposed measure provides:
It is the intent of this amendment to assure reasonable and equal access to the courts of Arkansas by all United States citizens within the state's legal jurisdiction and to assure accountability of the government of this state to the people of this state. The reforms herein put forth and adopted by petition of the people are intended to be broad and sweeping and to place reasonable limitations on the government of the state, recognizing that the State of Arkansas is a host, not a captor, of citizens of the United States. Any construction of this amendment should reflect its intended purpose. To that end, civil action by persons or entities in a court of competent jurisdiction is hereby authorized as a matter of right under this amendment and no immunity shall apply.
The substance of this provision is set forth in the final sentence, which would authorize civil actions "by persons or entities . . . as a matter of right" and which declares that "no immunity shall apply." Given the focus in the first three sentences of this provision on the accountability of the government itself, it is unclear whether you intend in the final sentence to dispose only of the state's sovereign immunity from suit, which is constitutionally mandated at Ark. Const. art. 5, § 22, or whether you also intend to dispense with the statutorily mandated limited and qualified immunity enjoyed by state employees. I will further note that qualified immunity is a matter of preemptive federal law, meaning that a reviewing court might well conclude that such immunity cannot be withheld by state constitutional amendment. See Anderson v. Creighton, 483 U.S. 635 *Page 9 
(1987). In light of the uncertainty regarding just what type of immunity you intend to abolish, I am unable to summarize this provision in a ballot title.
Subsection 6B of your proposed measure provides:
All laws and parts of laws, all constitutional amendments, or parts thereof, and all rights of the State heretofore deemed inherent which are in conflict with the provisions and intent of this amendment are hereby repealed.
This provision distinguishes between "[a]ll laws and parts of laws," on the one hand, and "all constitutional amendments," on the other — a distinction that suggests that the former phrase is meant to denote statutory law whereas the latter is meant to denote constitutional law. As pointed out above, subsection 6A of your proposed measure would effectively repeal by implication Ark. Const. art. 5, § 22, which is a provision of constitutional law that does not fall within the category of "constitutional amendments." Because of this ambiguity, I am unable to summarize this provision in a ballot title
In addition to noting the above recited ambiguities in the text of your proposed measure, which have prompted me to reject your proposed popular name and ballot title, I feel obliged to note that your ballot title as written would be deficient even if these ambiguities did not exist. As noted above, a ballot title must disclose information contained in a measure that might give a reasonable voter serious grounds for reflection — information that has not been disclosed in your ballot title as currently drafted. For instance, the ballot title fails to disclose that subsection 1F of your proposed measure would significantly shift the power to license and to monitor legal professionals from the judiciary to the legislature, thus marking a significant retreat from the separation-of-powers doctrine, see Ark. Const. art. 4, §§ 1 and 2, which mandates that legislative affairs be conducted by the legislature and judicial affairs be conducted by the judiciary. Similarly, your ballot title fails to disclose that subsection 6B would at the very least undermine the long-established doctrine of sovereign immunity, which is constitutionally guaranteed by Ark. Const. art. 5, § 22. The voters are entitled to be apprised of the scope of such changes from current law. Should you revise and resubmit your measure, your ballot title should more clearly disclose how your measure would change current statutory and constitutional law. In amending your submission, it might further behoove you to consider the primacy of federal law in certain of the areas discussed above.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court *Page 10 
has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL Attorney General